STATE OF NORTH CAROLINA v. ERNEST JIMENEZ AGUALLO

No. 188A86

(Filed 18 November 1986)

**1. Criminal Law § 73.2— child rape victim—statements to pediatrician—within medical treatment exception to hearsay rule**

Statements of a child rape victim to a physician were admissible under the medical diagnosis or treatment exception to the hearsay rule where the child was taken to a doctor by a social services worker as part of the Child Medical Examiner Program; there was no evidence that law enforcement authorities initiated the visit; *State v. Stafford,* 317 N.C. 568, could be distinguished because the victim there visited the physician three days prior to trial for the purpose of trial preparation, while the statements here were made during the initial examination by the physician for the purpose of treating the alleged sexual abuse; and the victim's statements identifying defendant were pertinent to diagnosis and treatment because the statements suggested the nature of the problem, which dictated the type of diagnostic examination, and were pertinent to the continued treatment of possible psychological and emotional problems. N.C.G.S. § 8C-1, Rule 803(4).

**2. Criminal Law § 86.8— child rape victim—opinion of physician as to credibility —not admissible**

The trial court erred in a prosecution for the rape of a child by admitting the testimony of a physician that the child was believable, and the error was prejudicial because the State's case hinged upon the victim's testimony and cross-examination raised some doubts about her credibility. N.C.G.S. § 8C-1, Rule 608(a).

Chief Justice BILLINGS dissenting in part.

BEFORE *Washington, J.,* at the 29 October 1985 Criminal Session of Superior Court, FORSYTH County, defendant was convicted of first-degree rape and received the mandatory life sentence. The defendant appeals as of right pursuant to N.C.G.S. § 7A-27(a). Heard in the Supreme Court on 8 September 1986.

*Lacy H. Thornburg, Attorney General, by Elisha H. Bunting, Jr., Assistant Attorney General, for the State.*

*Keith Stroud for defendant-appellant.*

MEYER, Justice.

This case presents two significant questions with respect to the testimony of a physician who examined a child rape victim. First, defendant argues that the trial court erred in allowing the examining physician to testify as to statements made to her by the victim. Second, defendant argues that the trial court erred in allowing the examining physician to testify as to whether the child victim was "believable."

We find that the child's statements to the physician were for the purpose of medical diagnosis and treatment and were thus admissible under Rule 803(4) of the North Carolina Rules of Evidence (N.C.G.S. § 8C-1, Rule 803(4) (Cum. Supp. 1985)). Because we also find that the physician's opinion testimony as to the believability of the child should have been excluded under Rules 608 and 405(a) of the North Carolina Rules of Evidence (N.C.G.S. § 8C-1, Rules 608 and 405(a) (Cum. Supp. 1985)), we order a new trial.

We decline to address the defendant's additional assignments of error, which raise questions not likely to recur at a new trial.

On 9 September 1985, the defendant was indicted on the charge of first-degree rape. N.C.G.S. § 14-27.2 (Cum. Supp. 1985). The indictment alleged that sometime between 20 November 1984 and 17 December 1984,[1] the defendant unlawfully, willfully, and feloniously engaged in vaginal intercourse with the victim, a nine-year-old child.

The State's evidence tended to show that between August and November 1984, the defendant lived with Mary, the victim's mother, and her two daughters, one of whom was the victim. In

---

1. The initial indictment alleged that the acts for which the defendant was charged occurred between 20 November 1984 and 17 December *1985*. On the defendant's motion to dismiss the indictment, the court ruled that the indictment contained a typographical error and thus restricted evidence of alleged wrongful acts to the period between 20 November 1984 and 17 December *1984*.

November, the defendant and Mary were married. Mary's two daughters continued to live in the same house as the defendant and Mary Aguallo.

One night in December 1984, Mary Aguallo awoke from her sleep and went into the living room of the apartment she shared with defendant and her two daughters. She saw the victim lying in front of the stool in front of the couch, and the defendant was on his knees in front of the victim, with his pants down but his underwear on. Mary told the victim to go into her room and later that evening arranged to have her mother, Betty Blackwell, take the children to her home. Mary stayed with the defendant at the apartment that evening, and the next day the defendant left by airplane for California.

On or about 20 December 1984, Mary took the victim to Dr. John Thomas' office and requested that the doctor give the child a physical examination. However, Mary did not tell the doctor about the incident with her husband or request that Dr. Thomas examine the victim's vaginal area.

In January 1985, leaving the victim with Betty Blackwell, Mary went to California to see the defendant. She stayed with the defendant in California for six months, until July 1985, when the defendant was arrested. She testified that she wanted to return to North Carolina prior to July 1985, but that she had no money and that the defendant managed to keep the checks that she earned while working for the defendant's family.

The nine-year-old victim testified that at some time, she could not remember the date, the defendant had laid her on the stool in front of the couch and "put his hot dog into my private place." She further testified that she told some of her school classmates about the incident with the defendant. According to the victim, one of her classmates then related the incident in a letter that was found in the school playground.

Betty Blackwell, the victim's grandmother, testified that on the evening that Mary sent the children to her house in July 1984, she examined the victim with a flashlight and noticed that her "privacy was very inflamed, red, inflamed."

Ms. Amy Collins of the Davie County Department of Social Services testified that sometime in June 1985 the principal of

Pinebrook Elementary School informed her of a report of possible child sexual abuse. Ms. Collins interviewed the victim. In July of 1985 she took the victim to the office of Dr. Sarah Sinal, a pediatrician at the Bowman-Gray School of Medicine in Winston-Salem. Ms. Collins also arranged therapy treatment for the victim at the Davie County Mental Health Clinic.

Dr. Sarah Sinal testified that she first saw the victim on 10 July 1985 and that the child was brought in on the Child Medical Examiner Program as an alleged sexual abuse case. Over objection, she testified as to what the victim told her prior to the physical examination. This testimony was consistent with the victim's testimony and implicated the defendant as the perpetrator of the offense. Over objection, Dr. Sinal also testified that the victim was a believable child.

The defendant testified that on the night in question, he was watching television with the children. He sat down on the couch and unbuttoned his pants and put his zipper halfway down. When he got up to change the channel, his pants came down as he was getting off the couch. The defendant had told the victim to go to her bedroom at the time her mother entered the room.

Dr. John Thomas testified for the defendant. He had seen the victim at his office on 20 December 1984. At the time, the victim was not anxious nor were any statements made to him to raise any suspicions that the child had been abused.

The jury found the defendant guilty of first-degree rape.

I.

[1] We first address the defendant's contention that the trial court erred in allowing Dr. Sinal to testify as to statements made to her by the victim. Because the record discloses no instruction limiting the admissibility of this evidence for corroborative purposes, we must determine whether Dr. Sinal's testimony was admissible as substantive evidence. The defendant argues that the statements are hearsay and not otherwise admissible under the North Carolina Rules of Evidence, Rule 803(4), exception applicable to statements made for the purpose of medical diagnosis or treatment. We disagree.

"Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in

evidence to prove the truth of the matter asserted. N.C. R. Evid. 801(c). Hearsay is not admissible except as provided by statute or the Rules of Evidence. N.C. R. Evid. 802.

On direct examination, Dr. Sarah Sinal testified that the victim came to her office on 10 July 1985. She was brought in by her grandmother and Amy Collins, a protective services worker. Dr. Sinal determined that the victim was brought in on the Child Medical Examiner Program.

Before conducting a physical examination, Dr. Sinal spoke with the victim. Dr. Sinal testified that as part of a set routine, she spoke with the children prior to an examination.

Over objection, Dr. Sinal was allowed to testify as to the conversation she had with the victim. She offered the following testimony as to what the victim told her:

> [B]efore Christmastime her stepfather, whose name she said was Ernie Aguallo, said to her one evening, "Do you want to see what boys and girls do when they get older?" And she told me that she said, "No," and that he said, "Well, I'm going to show you anyway." And she said at that point he unzipped his fly and took out his hot dog and I have an anatomical diagram and I asked her to identify the hot dog on the anatomical diagram and she pointed to the penis. And she said that he put his hot dog up inside of her and I asked her where and on the anatomical diagram she identified or pointed to the vagina. And I asked her whether he actually just touched her with his hot dog or whether it actually went up inside of her and she said that it went up inside of me [sic]. I asked her if it was painful and she said, "Yes, that it hurt a lot," and she started to yell but was afraid to.

Dr. Sinal's testimony was hearsay because it was offered to prove the truth of the matter asserted—that Ernest Aguallo indeed had vaginal intercourse with the victim. We must determine whether the statement is admissible under the authority of hearsay exceptions codified in Rules 803 and 804.

Rule 803 provides in pertinent part:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
>      . . . .

(4) Statements for Purposes of Medical Diagnosis or Treatment.—Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

N.C. R. Evid. 803(4).

The Commentary to Rule 803(4) suggests that statements made for the purpose of medical diagnosis or treatment have circumstantial guarantees of trustworthiness because of the patient's strong motivation to be truthful.

The defendant argues that the statements do not fall within the exception of Rule 803(4) because the victim's statements to the doctor were not for purpose of treatment or diagnosis, but rather for the purpose of gathering evidence for the State. The defendant's argument is belied by the facts.

The child was allegedly raped sometime between 20 November and 17 December 1984. In June 1985, Amy Collins, a social worker, was first made aware that the child was a possible rape victim. In July 1985, she brought the child to Dr. Sinal as part of the Child Medical Examiner Program. There is no evidence that law enforcement authorities initiated the visit to Dr. Sinal, which was primarily for the purpose of diagnosis and treatment.

The defendant argues that this case is controlled by *State v. Stafford*, 317 N.C. 568, 346 S.E. 2d 463 (1986), in which we held that certain statements made by the prosecutrix to her physician did not fall within the Rule 803(4) exception. In *Stafford*, the alleged rape of a nine-year-old occurred in December 1983. The victim was examined by her physician in January 1984 and later on 13 July 1984, three days prior to trial. There was no testimony that the prosecutrix visited the physician on 13 July for the purpose of diagnosis or treatment, and the physician admittedly did not make a diagnosis or treat the patient on that date.

In *Stafford*, this Court noted that the statements in question were not made for the purpose of diagnosis or treatment and that the statements were made to the physician three days before trial. We held that the statements were made by the victim to the

physician for the "purpose of preparing and presenting the state's 'rape trauma syndrome' theory at trial." *Stafford,* 317 N.C. at 574, 346 S.E. 2d at 467.

*Stafford* is distinguishable from the present case, in which the victim visited Dr. Sinal several months prior to trial. Dr. Sinal diagnosed the patient's condition, whereas in *Stafford* no diagnosis was made when the victim visited the physician three days prior to trial. Also, the present case differs from *Stafford* inasmuch as the statements were made during the initial examination by the physician for the purpose of treating the alleged sexual abuse, whereas in *Stafford* the statements were made during a subsequent visit in preparation for trial.

Having concluded that the statements made to Dr. Sinal were for the purpose of medical diagnosis and treatment, we must determine whether the *victim's statements* identifying the perpetrator of the crime were "reasonably" pertinent to diagnosis or treatment.

In *State v. Smith,* 315 N.C. 76, 337 S.E. 2d 833 (1985), we held that identity of the perpetrator is pertinent to the treatment or diagnosis of a child rape victim. In *Smith,* we noted that courts that have addressed the issue have admitted statements identifying the perpetrator of child sexual abuse where the motivation for the statement is to disclose information to aid in medical treatment or diagnosis.

It is important to note that the exception embodied in Rule 803(4) was not intended to make admissible a patient's statement to her doctor concerning *fault.* The Commentary notes:

> Statements as to fault would not ordinarily qualify under this latter language. Thus a patient's statement that he was struck by an automobile would qualify but not his statement that the car was driven through a red light.

Commentary, N.C. R. Evid. 803(4).

Recently, in *United States v. Renville,* 779 F. 2d 430 (8th Cir. 1985), the Eighth Circuit analyzed the application of the Rule 803(4) exception within the context of child sexual abuse cases.

Generally, under Rule 803(4), in the overall run of cases, statements as to an assailant's identity are seldom pertinent to di-

agnosis and do not ordinarily promote effective treatment. The patient has no sincere desire to account for fault because it is irrelevant to an anticipated course of treatment. Therefore, ordinarily such statements are not properly covered by the Rule 803(4) exception to the hearsay rule. *Renville*, 779 F. 2d at 436. However, in the context of a child sexual abuse or child rape, a victim's statements to a physician as to an assailant's identity are pertinent to diagnosis and treatment.

The *Renville* court noted two reasons why the identity of a perpetrator is pertinent to diagnosis in a child sexual abuse case. First, a proper diagnosis of a child's psychological problems resulting from sexual abuse or rape will often depend on the identity of the abuser. Second, information that a child sexual abuser is a member of the patient's household is reasonably pertinent to a course of treatment that includes removing the child from the home. *Id.* at 437-38. *See generally* Moore, *The Medical Diagnosis and Treatment Exception of the Hearsay Rule—The Use of the Child Protective Team in Child Sexual Abuse Prosecutions*, 13 N. Ky. L. Rev. 51 (1986); S. Saltzburg & K. Reddin, *Federal Rules of Evidence Manual* § 803(4) (4th ed. 1986 & Supp. 1986); McCormick on Evidence § 292, n. 14 (3d ed. 1984).

In the present case the victim's statements were pertinent to diagnosis and treatment. First, the statements suggested to Dr. Sinal the nature of the problem, which, in turn, dictated the type of examination she performed for diagnostic purposes. Additionally, the victim's identification of the defendant as perpetrator was pertinent to continued treatment of the possible psychological and emotional problems resulting from the rape.

Because the victim's statements were made for the purpose of and were pertinent to "medical diagnosis or treatment," Dr. Sinal's hearsay testimony was properly admitted under the Rule 803(4) exception to the hearsay rule. *See generally* 4 Weinstein's Evidence § 803(4)[01] (1986); 1 Brandis on North Carolina Evidence § 161 (2d rev. ed. 1982 & Supp. 1986); McCormick on Evidence § 292 (3d ed. 1984).

II.

[2] The defendant argues that the trial court erred in allowing Dr. Sinal, a pediatrician, to express her opinion that the victim

was "believable." The defendant asserts that Dr. Sinal was not qualified as an expert in determining believability and that her opinion as to the believability of the victim did not assist the jury.

We find that this "opinion" testimony is inadmissible under Rules 608(a) and 405.

Rule 608 provides in pertinent part:

> (a) *Opinion and reputation evidence of character.* — The credibility of a witness may be attacked or supported by evidence in the form of reputation or opinion *as provided in Rule 405(a)*, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

N.C.R. Evid. 608(a) (emphasis added). As noted in the official Commentary to Rule 608(a), the phrase "as provided in Rule 405(a)" was inserted to make clear that expert testimony on the credibility of a witness is not admissible.

Likewise, under Rule 405, which deals with methods of proving character, "[e]xpert testimony on character or a trait of character is not admissible as circumstantial evidence of behavior." N.C.R. Evid. 405(a).

In *State v. Heath*, 316 N.C. 339, 341 S.E. 2d 565 (1986), we held that it was prejudicial error to allow the victim's clinical psychologist to express her opinion as to whether the victim might have fabricated the facts of a sexual assault.

In the present case, the following exchange occurred on direct examination of Dr. Sinal:

> Q. Based on that conversation and the conversations you have with the children, do you normally form opinions as to whether they are believable or not?
>
> A. Yes.
>
> MR. STROUD: OBJECTION, your Honor.
>
> COURT: OVERRULED.
>
> EXCEPTION NO. 18

Q. After talking to . . . [the victim], did you form an opinion about whether she was believable or not?

A. Yes, sir.

MR. STROUD: OBJECTION, your Honor.

COURT: OVERRULED.

EXCEPTION NO. 19

Q. What was that, please?

A. I think she's believable.

This testimony amounted to an expert's opinion as to the credibility of the victim. As in *Heath*, we find that the testimony is inadmissible under the mandate of Rule 608(a).

Having found that the court erred in allowing Dr. Sinal to testify that the victim was believable, we must determine whether the error was so prejudicial as to warrant a new trial.

A defendant is prejudiced by adverse evidentiary rulings where there is a "reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C.G.S. § 15A-1443 (1983).

The evidence of the defendant's guilt was strong but not overwhelming. Based on the victim's testimony, a jury could reasonably conclude that the defendant was guilty of rape. In addition to the testimony of the victim, the State offered evidence that the victim consistently told the same story to others. Finally, there was medical evidence of penetration. However, because the physical examination of the victim took place more than six months after the alleged rape, it was impossible to determine whether the penetration resulted from the sexual abuse alleged in the indictment or some other cause. Therefore, the State's case hinged on the victim's testimony and thus upon her credibility. Cross-examination of the victim raised some doubts about the victim's credibility. Because it is likely that any doubts the jurors may have had about the victim's credibility were allayed by the pediatrician's testimony that she found the victim to be "believable," we conclude that absent this testimony, there is a reasonable possibility that a different result would have been reached by

the jury. Accordingly, for the prejudicial effect of the error in the admission of this testimony, we order a new trial.

New trial.

Chief Justice BILLINGS dissenting in part.

Although N.C.G.S. § 8C-1, Rule 803(4) was clearly intended to liberalize the hearsay exception allowing introduction for substantive use of statements made for purposes of medical diagnosis or treatment, the rule must not be applied mechanically, without regard for its intent and justification.

The benchmark for use of hearsay testimony is an identifiable reason for recognizing that the statement made by a declarant out of court and not under oath is inherently reliable. That inherent reliability may be found in the self-interest of a person seeking medical treatment. The patient, seeking help for his or her medical condition, realizes that in order for the physician to make an accurate diagnosis and to provide effective treatment, the information regarding the onset of symptoms, the location and kind of pain, etc. must be accurately related. *State v. Smith*, 315 N.C. 76, 337 S.E. 2d 833 (1985). The information is inherently reliable only if the speaker realizes the necessity for the information to be correct.

In the majority opinion, the focus seems to be placed, not upon the realization by the child that accurate identification of her abuser was necessary to her treatment, but upon the doctor's knowledge of why information, usually "irrelevant to an anticipated course of treatment," (318 N.C. 590, 597, 350 S.E. 2d 76, 80) and "ordinarily . . . not properly covered by the Rule 803(4) exception to the hearsay rule," (*id.*) is useful for the treatment of the sexually abused child.

In the case *sub judice*, nothing in the majority opinion indicates that the child sought medical treatment or was aware that her truthful identification of her abuser was necessary in aid of treatment. The visit to the physician's office was prompted not by the child's seeking either physical or psychological help necessitated by an act that occurred seven months earlier, but by adults' reaction to information that a criminal act had taken place. Instead of adopting a mechanical rule that so long as the recipient

of an out of court declaration has a medical degree, the statement of a patient is admissible at trial if the *physician* is aware of some diagnosis or treatment use which he or she can make of the information, I would require at least some basis upon which to infer that the *declarant* was aware of the heightened need for truthfulness. If, as I suspect, the basis for the majority's faith in the reliability of the statement has more to do with the age of the victim than it does with her realization of the need for truthfulness in order to get appropriate treatment, this Court should encourage the legislature to consider the appropriateness of special rules for obtaining evidence in child sexual abuse cases[1] rather than to try to fit this testimony into a mold which cannot contain it. As at least one commentator has observed, "Concern over the recent revelations of child sex abuse have [sic] caused several state

---

1. See Unif. R. Evid. Rule 807 (1986). The American Bar Association approved Guidelines for the Fair Treatment of Child Witnesses in Cases Where Child Abuse Is Alleged at its 10 July 1985 meeting. The guidelines recommend allowance of videotaped depositions as follows:

3. In criminal cases and juvenile delinquency and child protection proceedings where child abuse is alleged, court procedures and protocol should be modified as necessary to accommodate the needs of child witnesses including:

. . .

j) When necessary the court should permit the child's testimony at a pretrial or noncriminal hearing to be given by means of a videotaped deposition.

American Bar Association, *Guidelines for the Fair Treatment of Child Witnesses in Cases Where Child Abuse Is Alleged* 1-2 (1985). In North Carolina the Governor's Crime Commission recommended "that the General Assembly enact legislation to allow for the electronic transmission or recording of child victim testimony which protects the defendant's right to confront the witnesses against him or her" and drafted a proposed act. Governor's Crime Commission, Department of Crime Control and Public Safety, *Missing Children: A Report to the Governor* 6-9 (1985).

For discussions of the problem and references to legislation adopted by various states see R. Eatman & J. Bulkley, *Protecting Child Victim/Witnesses: Sample Laws and Materials* 17-34 (National Legal Resource Center for Child Advocacy & Protection 1986); National Legal Resource Center for Child Advocacy and Protection — Child Sexual Abuse Law Reform Project, *Evidentiary and Procedural Trends in State Legislation and Other Emerging Legal Issues in Child Sexual Abuse Cases* 11-12, 26-27 (American Bar Association, Young Lawyers Division 1985); *Selected State Legislation: A Guide for Effective State Laws to Protect Children* 20-21 (National Center for Missing & Exploited Children 1985); D. Whitcomb, E. Shapiro & L. Stellwagen, *When the Victim Is a Child* 59-68 (U.S. Department of Justice, National Institute of Justice 1985).

courts to expand, if not distort, the concept of diagnosis or treatment." M. Graham, *Handbook of Federal Evidence* § 803.4 at 828 n. 4 (2d ed. 1986).

In the case *sub judice* the hearsay declarant also testified at trial and was subject to confrontation and cross-examination by the defendant; therefore substantive use of the hearsay evidence does not raise questions about violation of the defendant's rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. The majority opinion appropriately does not deal with the Confrontation Clause problem since it was not raised. However, I fear that this case may encourage prosecutors to rely exclusively upon the testimony of physicians, relating hearsay statements of child victims in sex abuse cases, to identify the abusers. I therefore dissent from the holding that the statement of the child to the witness was admissible as substantive evidence, and I also write to suggest that prosecutors exercise caution in relying exclusively on hearsay statements to prove the offense in cases of child sexual abuse.

