STATE OF NORTH CAROLINA v. JEAN C. SMITH OLIVER AND RICHARD THOMAS BRUMMITT

No. 8615SC673

(Filed 7 April 1987)

**1. Indictment and Warrant § 9.11— period of time alleged—indictments not defective**

There was no merit to defendants' contention that indictments were fatally defective because they alleged the offenses occurred during a specified period of time rather than on specific days and because time was of the essence in their trial, since N.C.G.S. § 15A-924(a)(4) specifically allows pleadings to indicate the offense was committed during a designated period of time, and the evidence was to the effect that the offenses occurred between the dates set forth in the indictments.

**2. Witnesses § 1.1— sex offenses—mentally retarded victim—testimony admissible**

In a prosecution of defendants for various sex offenses the trial court did not abuse its discretion in allowing the mentally retarded prosecuting witness to testify, though there were some questions which she could not answer, where the witness was able to tell the court where she went to school, name her teachers, tell how old she was, when her birthday was, and what month it was during the trial, and she said she knew it was bad to tell a lie and was able also to say whether a statement told her was a lie or the truth.

**3. Criminal Law § 87.1— mentally retarded witness—sexual matters—leading questions proper**

In a prosecution of defendants for various sex related offenses the trial court did not abuse its discretion in allowing certain leading questions concerning an extremely delicate matter to be asked of the mildly retarded prosecuting witness.

1

State v. Oliver

**4. Criminal Law § 51.1 — witnesses found to be experts by other courts — testimony improper — witnesses properly qualified**

Though the trial court erred in allowing the State's expert witnesses to testify that they had been found to be experts by other courts, such error was harmless when the court did not rely solely upon that testimony but also heard testimony as to the witnesses' knowledge, skills, experience, training, and education.

**5. Rape and Allied Offenses § 4 — child victim — expert opinion about children's honesty — admissibility**

In a prosecution of defendants for various sex related offenses allegedly committed upon one defendant's mentally retarded daughter, the trial court did not err in allowing expert witnesses to testify to the effect that children in general do not lie about sexual abuse, that mentally retarded children generally think in concrete terms, that it would be very difficult to teach them facts and details about sexual acts, and that they would be unable to fantasize about sexual matters, since the testimony was the witnesses' interpretation of facts within their expertise and not their opinion upon the credibility of this specific victim; the witnesses were in a better position to have an opinion than the jury; and the probative value of the testimony was not outweighed by the danger of unfair prejudice or confusion.

**6. Criminal Law § 80; Rape and Allied Offenses § 4 — expert witness's reliance on literature — admissibility**

In a prosecution of defendants for various sex related offenses, literature upon which a medical expert witness relied would come within the Rule 803(18) exception to the hearsay rule as statements contained in periodicals established as reliable authority by the testimony of the witness and relied upon by her in direct examination; furthermore, defendants failed to challenge the reliability of the sources upon which the witness relied and failed to request that the witness reveal those sources.

**7. Criminal Law § 73.5 — statements made during medical diagnosis and treatment — admissibility as exception to hearsay rule**

A medical expert's interview of a sexual abuse victim was conducted for purposes of diagnosis and treatment and statements made by the victim were admissible where the witness was requested to interview the victim by personnel from the Child Mental Health Evaluation Program in order to answer a couple of specific questions; this request was made to the witness because her expertise in developmental disabilities would aid the diagnosis and treatment of the mentally retarded victim; and the interview took place three weeks after law enforcement officers were notified of the abuse, during the same period a pediatrician from the Child Mental Health Education Program examined the victim, and more than seven months before defendant's trial. Moreover, drawings and statements made by the victim to the witness were reasonably pertinent to the victim's diagnosis or treatment, and admission of them therefore was not error.

---

State v. Oliver

---

8. **Rape and Allied Offenses § 5— victim as "mentally defective"—sufficiency of evidence**

In a prosecution of defendants for second degree sex offenses committed against one defendant's mentally retarded daughter, evidence was sufficient to support a finding that the victim was "mentally defective" under N.C.G.S. § 14-27.1(1) where the victim, though able verbally to protest and able to engage in some physical resistance, was nevertheless substantially incapable of "resisting the act of vaginal intercourse or sexual act" where there was evidence that she complied with defendants' direction and submitted to their abuse.

9. **Rape and Allied Offenses § 4.1— defendant's guilt of other offenses—admissibility to show common plan or scheme**

Testimony of the prosecuting witness regarding acts of sexual abuse other than those charged in the indictments was properly admitted to establish a common plan or scheme on the part of one defendant sexually to abuse her child.

10. **Rape and Allied Offenses § 4.3; Criminal Law § 85.1— victim's reputation for truthfulness—character witness's opinion admissible**

The trial court did not err in allowing the prosecution to ask a character witness about the victim's reputation for truthfulness in her school community based on the witness's conversations with and about the victim.

11. **Rape and Allied Offenses § 5— mentally retarded victim's testimony—sufficiency of evidence of penetration**

Testimony by the mentally retarded victim of sexual offenses that one defendant put her finger "where a tampon goes" was sufficient evidence of penetration to support the conviction of second degree sexual offense under N.C.G.S. § 14-27.5.

12. **Rape and Allied Offenses § 5— victim's mother as aider and abettor—sufficiency of evidence**

Evidence was sufficient to convict one defendant of aiding and abetting in the second degree rape of her child where the victim testified that her mother was in bed with her during the time of the rape by the male defendant and that her mother was also touching her during that time as well.

13. **Criminal Law § 112.1— reasonable doubt—instruction proper**

There was no merit to one defendant's contention that the instruction concerning reasonable doubt was in error because it omitted the phrase "convinced to a moral certainty."

APPEAL by defendants from *Farmer, Judge.* Jury verdict entered 9 December 1985. Judgment and commitment entered 13 December 1985 in Superior Court, ALAMANCE County. Heard in the Court of Appeals 9 December 1986.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Philip A. Telfer, for the State.*

*Raiford & Harviel, by Ernest J. Harviel for defendant-appellant Oliver and Frederick J. Sternberg, for defendant-appellant Brummitt.*

GREENE, Judge.

Defendants Oliver and Brummitt were arrested and charged with several counts of sex-related offenses committed against defendant Oliver's daughter. State's evidence showed Oliver's daughter had a full scale IQ of 66 or less. The indictments alleged the offenses occurred on a date between 19 December 1984 and 15 April 1985 but did not name a specific day. Before trial, each defendant moved to dismiss the charges. They argued the indictments were defective because they did not designate a specific date.

During the trial, the State presented two experts: Dr. Charles Scott, a pediatrician, and Dr. Betty Gordon, a clinical psychologist. Both experts had personally interviewed the alleged victim who was 16-years old at the time. Dr. Scott testified that in his opinion, the victim functioned mentally at an eight to ten-year-old level. Dr. Gordon's opinion was that she functioned at an eight-year-old level. Dr. Scott further testified in part:

Q. Based on your education, your experience, and your continued education in reading these periodicals regarding the area, do you have an opinion as to whether or not children fantasize about sexual abuse matters?

*      *      *

A. Yes, I have an opinion, and that is that children don't fantasize about sexual abuse matters.

Q. Now, can you explain to the jury what you mean by fantasize?

A. In other words, they don't—by fantasize they don't make up stories about sexual abuse and report—

Q. All right. Are you—

A. —and report it to others.

Q. Are—are you acquainted with any—in connection with your opinion, are you acquainted with any age limits we're talking about here or any generally accepted in your profession age limits regarding that?

A. I guess you'd say the younger the child the more believable the story.

Dr. Gordon testified she had been requested to evaluate the victim concerning two questions: Whether she could tell the difference between fact and fantasy and whether she could be influenced to state she had been sexually assaulted. Dr. Gordon further testified:

Q. You indicated there were two questions that you were asked to evaluate and one dealt with the fact and fantasy feature. What was the other question?

A. Whether or not I felt she could have been influenced to say that she had been sexually abused.

Q. And was that coaching basically, coaching her to say that?

A. Yes.

Q. What did you observe—what did you do in connection with evaluating that question?

A. In general, the evaluation of that question is based more on my understanding of mental retardation and the way children think at different ages. Mental retardation means that someone is a slow learner and the degrees of mental retardation simply refer to the—the rate at which one learns, and for someone to influence a child to say something, a child who is mentally retarded, it would take a considerable amount of work simply because they learn very slowly. It's very difficult to teach them, and to teach them facts and details about something, such as sexuality, that a child has limited knowledge and understanding of, would be extremely difficult.

*   *   *

Q. Have you—have you had any work or—or during the course of your study and education—continuing education, is

there a—any body of literature in your—accepted by your profession regarding children fantasizing about things, that is, making things up in their minds—that aren't true?

A. Developmental literature and the literature about the development of thinking skills deal with that in the sense that children who think concretely need to have experienced something in some way in order to think about it, in order to talk about it. It's like you—they can't think or talk about things that they haven't in some way experienced.

Q. And that experience could be seeing or touching or looking and—

A. Right.

Q. It could be from a number of different things?

A. Right.

Q. Can it be from being told about it?

A. To some extent, but not likely, and again, it depends on what it is. If you tell somebody about something that's an everyday experience. Like if you tell a young child to go get their pajamas they know what pajamas are because they've experienced it a lot and they can probably go get their pajamas, but if you tell the child something about the moon or the stars or numbers or something that they haven't experienced directly, then it would be difficult for them to understand that.

Defendants timely objected to all the questions tendered by the State to the expert witnesses now complained of and timely made motions to strike after each answer. The objections were overruled and the motions to strike denied.

The jury found defendant Oliver guilty of rape of and sexual offense against a mentally defective female (N.C. Gen. Stat. Secs. 14-27.3(a)(2) and 14-27.5(a)(2))—both second degree offenses. It found defendant Brummitt guilty of rape of and sexual offense against a mentally defective female and also guilty of a crime against nature (N.C. Gen. Stat. Sec. 14-177).

I

[1]  Defendants contend the trial court erred in denying their motions to dismiss for failure to allege a specific date on the indictments. Defendants say the indictments were fatally defective first, because the indictments alleged the offenses occurred during a specified period of time rather than on specific days and second, because time was of the essence in their trial.

N.C. Gen. Stat. Sec. 15A-924(a)(4) reads as follows:

(a) A criminal pleading must contain:

*    *    *

(4) A statement or cross reference in each count indicating that the offense charged was committed on, or on or about, a designated date, or during a designated period of time. *Error as to a date or its omission is not ground for dismissal of the charges or for reversal of a conviction if time was not of the essence with respect to the charge and the error or omission did not mislead the defendant to his prejudice.* (Emphasis added.)

Neither this statute nor the statutes under which defendants were charged require a criminal pleading to allege the specific date of the offense. Further, Section 15A-924(a)(4) specifically allows pleadings to indicate the offense was committed during a designated period of time, as the indictments in this case did.

The statute indicates that error as to the date on the indictment may be grounds for dismissal if time was of the essence with respect to the charge and the defendant was misled to his prejudice. Here, there was no evidence that there was an error in the dates alleged in the indictments. In fact, the evidence was to the effect that the offenses occurred between the dates set forth in the indictments. Since there was no error in the dates alleged, even if time were of the essence in defendants' case, the charges would not be subject to dismissal under Section 15A-924(a)(4).

During the trial in the case *sub judice*, both defendants attempted to prove periods of time when either the prosecuting witness or the defendants were not at defendant Oliver's trailer where the offenses were alleged to have occurred. Defendants

cite one case to support their contention — *State v. Whittemore*, 255 N.C. 583, 122 S.E. 2d 396 (1961). We have reviewed *Whittemore* and searched for other authority to support defendants' contention that this case should be dismissed because time was of the essence in their trial. Our search has revealed no decision which would support defendants' contention *unless* the defendants could show they had been *misled to their prejudice* by an error or omission in the indictment. *See, e.g., State v. Wood*, 311 N.C. 739, 319 S.E. 2d 247 (1984); *State v. Christopher*, 307 N.C. 645, 300 S.E. 2d 381 (1983); *State v. Effler*, 309 N.C. 742, 309 S.E. 2d 203 (1983); *State v. Wilson*, 264 N.C. 373, 141 S.E. 2d 801 (1965); *State v. Hicks*, 84 N.C. App. 237, 352 S.E. 2d 424 (1987). As previously stated above, there was no error in or omission of the dates alleged in the indictments. Defendants' assignment of error as to this issue is dismissed.

II

**[2]** Defendants contend the prosecuting witness was not competent to testify. In response to defendants' objection at trial, the court allowed a *voir dire* to be had of the witness.

The general rule under North Carolina Rules of Evidence, N.C. Gen. Stat. Sec. 8C-1, Rule 601, is that every person is competent to be a witness unless the court determines he is "incapable of expressing himself concerning the matter as to be understood . . . or incapable of understanding the duty of a witness to tell the truth." Rule 601(b). It matters not that some of the witness's answers during *voir dire* are ambiguous or vague or that they are unable to answer some of the questions which are put to them. Such performance is not unusual when the witness is a young child. *State v. Gordon*, 316 N.C. 497, 503, 342 S.E. 2d 509, 512 (1986). The same applies for a mentally retarded individual. The trial court did not abuse its discretion.

While defendants point out that the prosecuting witness was unable to testify how long it had been since August of that year, that she was unable to answer with specificity where she lived in her town or how long she had lived there and that there were several questions she did not answer at all, the record shows there was sufficient evidence for the trial court to determine she was competent to testify. She was able to tell the court where she went to school, name her teachers, tell how old she was, when

her birthday was, and what month it was during the trial. She said she knew it was bad to tell a lie and was able also to say whether a statement told her was a lie or the truth.

### III

[3]  Defendants next contend that after finding the prosecuting witness competent to testify, the court erred in allowing leading questions upon direct examination of her.

Under North Carolina Rules of Evidence, "[l]eading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony." N.C. Gen. Stat. Sec. 8C-1, Rule 611(c). It is well recognized that, when the witness has difficulty in understanding the question because of age or immaturity or where inquiry is made into a subject of delicate nature such as sexual matters, leading questions are necessary to develop the witness's testimony. *State v. Greene*, 285 N.C. 482, 492, 206 S.E. 2d 229, 236 (1974); *State v. Williams*, 303 N.C. 507, 511, 279 S.E. 2d 592, 595 (1981).

In this case, the prosecuting witness was mildly mentally retarded and was testifying to a matter of extremely delicate nature. Our review of the transcript shows the trial judge did not give free rein to the State in asking leading questions on direct but sustained several of defendants' objections. The questions the court allowed were necessary to develop the witness's testimony. The trial court judiciously exercised its discretion and there was no abuse.

### IV

[4]  Defendants next contend the trial court erred in allowing the State's expert witnesses to testify they had been found to be experts by other courts. While we agree the court committed error, we find defendants failed to show, as required under N.C. Gen. Stat. Sec. 15A-1443(a), how they were prejudiced by the testimony.

North Carolina Rules of Evidence, Rule 702, states: "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opin-

ion." N.C. Gen. Stat. Sec. 8C-1, Rule 702. In the absence of a stipulation, a witness which a party is attempting to qualify as an expert must testify to their qualification as set forth in Rule 702. A court may not rule that a witness is expert on the basis that another court has found that witness to be an expert. To do so would allow for the perpetuation of any error in the first finding to affect the later, unrelated trial. It would also make the decision of the trial court impossible to uphold on appeal as there would be no competent evidence to support it. *See, e.g., State v. Combs*, 200 N.C. 671, 675, 158 S.E. 252, 254 (1931).

However, the trial court did not rely solely upon the testimony that the witnesses had been found expert by other courts but also heard testimony as to the witnesses' knowledge, skills, experience, training and education. Since there was sufficient evidence upon which the trial court could base its decision that the witnesses were expert, we find the error harmless.

V

**[5]** Defendants contend the trial court erred in overruling several of their objections to testimony from the State's expert witnesses. They first contend the testimony of Dr. Scott to the effect that children in general do not lie about sexual abuse was inadmissible.

While a trial court has great discretion regarding the admissibility of expert testimony, *State v. Bullard*, 312 N.C. 129, 140, 322 S.E. 2d 370, 376 (1984), its discretion is limited by directives in the Rules of Evidence. Defendants complain the testimony of the State's experts "enhanced" the credibility of the prosecuting witness. However, the mere fact that an expert's testimony makes the testimony of another witness more believable, thus "enhancing" their credibility, is not sufficient to warrant its exclusion.

N.C. Gen. Stat. Sec. 8C-1, Rule 405(a) of the North Carolina Rules of Evidence provides that "[e]xpert testimony on character or a trait of character is not admissible as circumstantial evidence of behavior." Rule 608(a), concerning the manner in which a witness's credibility may be attacked or supported, refers to Rule 405(a). The comment to Rule 608 states: "The reference to Rule 405(a) is to make it clear that expert testimony on the credibility of a witness is not admissible."

Under this guidance, our courts have held expert testimony inadmissible if the expert testifies that the prosecuting child-witness in a trial for sexual abuse is believable, *State v. Aguallo*, 318 N.C. 590, 350 S.E. 2d 76 (1986), or to the effect that the prosecuting child-witness is not lying about the alleged sexual assault. *State v. Heath*, 316 N.C. 337, 341 S.E. 2d 565 (1986) (the expert testified there was nothing in the record or current behavior that indicated the victim had a record of lying. *Id.* at 340, 341 S.E. 2d at 567); *State v. Kim*, 318 N.C. 614, 350 S.E. 2d 347 (1986) (the expert said the victim had not been untruthful with her. *Id.* at 620, 350 S.E. 2d at 351); *State v. Holloway*, 82 N.C. App. 586, 347 S.E. 2d 72 (1986) (the experts testified "that in their opinion the child had testified *truthfully*." *Id.* at 587, 347 S.E. 2d at 73); *State v. Jenkins*, 83 N.C. App. 616, 351 S.E. 2d 299 (1986) (the expert gave his opinion that if the victim said he had been abused, he was not making it up. *Id.* at 623, 351 S.E. 2d at 303); *State v. Keen*, 309 N.C. App. 158, 305 S.E. 2d 535 (1983) (in response to a question about fantasizing, the expert said that in his opinion an attack occurred on the victim; that it was reality. *Id.* at 162, 305 S.E. 2d at 537). However, until now, our courts have not been presented with the question of admissibility of expert testimony on the credibility of children in general who relate stories of sexual abuse.

Dr. Scott testified that children don't make up stories about sexual abuse and that the younger the child, the more believable the story. He did not testify to the credibility of *the victim* but to the general credibility of children who report sexual abuse. Since such testimony was Dr. Scott's interpretation of facts within his expertise, and not his opinion upon the credibility of the specific victim, it is not excluded by Rule 405. The proper test of its admissibility is whether he was in a better position to have an opinion than the jury. *See State v. Wilkerson*, 295 N.C. 559, 569, 247 S.E. 2d 905, 911 (1978). In other words, was Dr. Scott's opinion helpful to the jury? *See* North Carolina Rules of Evidence, Rule 702. (N.C. Gen. Stat. Sec. 8C-1.) We determine that it was.

The nature of the sexual abuse of children, particularly mentally retarded children, places lay jurors at a disadvantage. Common experience generally does not provide a background for understanding the special traits of these witnesses. Such an understanding is relevant as it would help the jury determine the

credibility of a child who complains of sexual abuse. The young child or mentally retarded individual subjected to sexual abuse may be unaware or uncertain of the criminality of the abuser's conduct. Thus, the child may delay reporting the abuse. In addition, the child may delay reporting the abuse because of confusion, guilt, fear or shame. The victim may also recant the story or, particularly because of youth or mental retardation, be unable to remember the chronology of the abuse or be unable to relate it consistently.

Dr. Scott is a pediatrician. He testified he had been a member of the Child Medical Examiners Program for child abuse from its beginning in the early 1970's and since that time had interviewed approximately one to two children each month who had allegedly been sexually abused. Dr. Scott testified he had devoted a portion of his practice to the examination of children involved in sexual abuse and that he had kept abreast of information in that area through professional journals. We find that Dr. Scott was in a better position than the trier of fact to have an opinion on the credibility of children in general who report sexual abuse. His opinion is therefore admissible under Rule 702.

Testimony otherwise admissible may, however, be excluded under Rule 403 of the North Carolina Rules of Evidence if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. Sec. 8C-1, Rule 403. This is a matter left to the discretion of the trial court. *State v. Mason*, 315 N.C. 724, 731, 340 S.E. 2d 430, 435 (1986).

Dr. Scott's opinion was helpful to the jury in determining the victim's credibility and was therefore probative.

The jury had the opportunity to see and hear the prosecuting witness both upon direct and cross-examination. The defendants had ample opportunity to discount Dr. Scott's testimony both by cross-examination and presentation of their own expert witness had they chosen to do so. We find the trial court did not abuse its discretion by admitting the testimony under Rule 403.

As the testimony was admissible under Rule 702 and Rule 403, we find the trial court did not err in allowing Dr. Scott to

testify on the credibility of children in general who report sexual abuse.

Defendants also assign error to the admission of several statements made by Dr. Gordon on the basis that they enhanced the credibility of the prosecuting witness. In light of the prior discussion, we can deal with these assignments summarily. It was not error for the trial court to admit Dr. Gordon's testimony that mentally retarded children generally think in concrete terms and that it would be very difficult to teach them facts and details about sexual acts. Neither was it error for the court to admit her testimony that they would be unable to fantasize about sexual matters for the same reasons. Dr. Gordon's testimony was in regard to matters about which she was in a better position than the jury to have an opinion. Neither did the trial judge abuse his discretion in determining the probative value of the testimony was not substantially outweighed by other trial concerns under Rule 403.

## VI

[6] On direct examination, Dr. Gordon explained that her profession accepted a body of literature regarding sexual abuse. Over defendants' objections, she was permitted during her testimony to mention what the literature said.

Defendants contend the information from the literature was irrelevant and inadmissible hearsay. The testimony complained of regards the ability of children to think abstractly and fantasize. Our review of the record reveals that defendants attempted to show the victim had imagined the alleged sexual abuse and told others it actually happened in order to escape her home situation. We find the testimony relevant and proceed to address whether it should have been excluded as hearsay.

Rule 803(18) provides an exception to the hearsay rule for learned treatises.

> *To the extent* called to the attention of an expert witness upon cross-examination or *relied upon by him in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of* history, *medicine, or other science* or art, *established as a reliable authority by the testimony or admission of the witness* or by other expert

testimony or by judicial notice. If admitted, the statements may be read into evidence but may not be received as exhibits. (Emphasis added.)

N.C. Gen. Stat. Sec. 8C-1, Rule 803(18). *See also State v. Wade*, 296 N.C. 454, 462, 251 S.E. 2d 407, 412 (1979).

From the information available to us in the record, the literature upon which Dr. Gordon relied would come within the Rule 803(18) exception to the hearsay rule as statements contained in periodicals established as reliable authority by the testimony of Dr. Gordon and relied upon by her in direct examination. The record indicates defendants not only failed to challenge the reliability of the sources upon which Dr. Gordon relied, but failed even to request Dr. Gordon to reveal those sources. We have previously indicated in *State v. Gary*, 78 N.C. App. 29, 337 S.E. 2d 70 (1985), *disc. rev. denied*, 316 N.C. 197, 341 S.E. 2d 586 (1986), that a party will have difficulty sustaining an objection on the basis of hearsay when they fail to challenge the basis of the expert's opinion admitted under Rule of Evidence 705. *Id.* at 38-39, 337 S.E. 2d at 77. By analogy, we hold that a party who fails to challenge the reliability of authority prima facie admissible under Rule 803(18) must overcome a presumption of admissibility on appeal. Defendants here have failed to overcome that presumption; Dr. Gordon's testimony regarding the basis for her opinions was properly admitted under Rule 803(18).

## VII

[7]   Defendants also contend that drawings and oral statements made by the prosecuting witness during her interview with Dr. Gordon are inadmissible hearsay and should have been excluded. The State argues both the drawings and the statements were admissible under N.C. Gen. Stat. Sec. 8C-1, Rule 803(4).

Hearsay statements made for the purpose of medical or psychological diagnosis are admissible as an exception to the hearsay rule. N.C. Gen. Stat. Sec. 8C-1, Rule 803(4); 1 H. Brandis, Brandis on North Carolina Evidence Sec. 161 at 635 (1982). Defendants contend neither the drawings nor the statements fall within this exception because Dr. Gordon interviewed the prosecuting witness in preparation for defendants' trial and not for the purpose of medical or psychological diagnosis.

The exceptions to the hearsay rule in Rule 803 embody instances in which out-of-court statements are generally inherently trustworthy because of the context in which they have arisen. *See* Advisory Committee Notes to N.C. Gen. Stat. Sec. 8C-1, Rule 803. Statements made for the purpose of diagnosis or treatment are inherently trustworthy and reliable because the patient is motivated to tell the truth in order to receive proper diagnosis or treatment. *State v. Smith*, 315 N.C. 76, 84, 337 S.E. 2d 833, 839 (1985).

In determining whether the trial court erred in admitting the hearsay evidence we must first determine whether Dr. Gordon's interview was made for the purpose of diagnosis or treatment. If so, we must then determine whether the drawings and statements made by the victim during the interview were reasonably pertinent to the purpose of the interview. *See State v. Aguallo*, 318 N.C. 590, 596, 350 S.E. 2d 76, 80 (1986).

Defendants contend the admitted purpose of Dr. Gordon's interview reveals it was conducted for use at defendants' trial rather than for diagnosis and treatment. Had the interview been conducted for the purpose of "preparing and presenting" the State's theory at trial, the disputed evidence would not be admissible under Rule 803(4). *State v. Stafford*, 317 N.C. 568, 574, 346 S.E. 2d 463, 467 (1986). Dr. Gordon testified she had been requested to interview the victim to determine whether she understood the difference between fact and fantasy and whether she could have been "coached" into saying she had been sexually assaulted.

Our Supreme Court has held that the assailant's identity in a child sexual abuse or child rape case is pertinent to diagnosis or treatment of the alleged child-victim. This is so because "[f]irst, a proper diagnosis of a child's psychological problems resulting from sexual abuse or rape will often depend on the identity of the abuser. Second, information that a child sexual abuser is a member of the patient's household is reasonably pertinent to a course of treatment that includes removing the child from the home." *State v. Aguallo*, 318 N.C. 590, 597, 350 S.E. 2d 76, 80 (1986) (citations omitted). Whether a child could distinguish between fact and fantasy and whether a child could have easily been coached into alleging sexual assault are equally pertinent to the diagnosis and

treatment of a child who alleges sexual abuse. A child who cannot distinguish fact from fantasy would receive different counselling and psychological therapy than would a child who could make the distinction. The same is true between children who are easily taught and those who are not.

The content of an interview, though, is not controlling in the determination of whether it was a bona fide psychological examination. Had the defendants presented evidence that Dr. Gordon was requested by persons involved in the prosecution of this case to interview the victim or that her interview was far removed in time from the victim's initial diagnosis or close in time to the trial, their assignment of error would have more merit. *See, e.g., State v. Stafford,* 317 N.C. 568, 346 S.E. 2d 463 (1986). However, Dr. Gordon testified she was requested to interview the victim by personnel from the Child Mental Health Evaluation Program in order to answer a couple of specific questions. She indicated this request was made to her because her expertise in developmental disabilities would aid the diagnosis and treatment of the mentally retarded victim. Additionally, Dr. Gordon testified she interviewed the victim on 2 May 1985, three weeks after law enforcement officers were notified of the abuse and during the same period Dr. Scott from the Child Mental Health Education Program examined the victim. Additionally, the interview was conducted more than seven months before the defendants' trial.

Since Dr. Gordon's interview was conducted for the purpose of diagnosis and treatment, we must next consider whether the drawings and the statements made by the victim to Dr. Gordon were reasonably pertinent to the victim's diagnosis or treatment. *See State v. Aguallo,* 318 N.C. 590, 596, 350 S.E. 2d 76, 80 (1986); *State v. Smith,* 315 N.C. 76, 337 S.E. 2d 833 (1985).

Dr. Gordon testified that during the interview the victim identified male and female "private parts" on anatomical drawings and said she knew it wasn't right for other people to touch one's private parts or for her to touch other people's private parts. She was unable to describe sexual behavior such as sexual intercourse; eventually telling Dr. Gordon she thought it was similar to holding hands. Dr. Gordon also testified that she asked the victim to draw pictures of her family and that the victim expressed "a lot of fear" of her mother while drawing her picture

State v. Oliver

and that the victim became angry and upset when asked to draw a picture of her mother's boyfriend (defendant Brummitt).

Several statements were hearsay; however, we find they were reasonably pertinent to Dr. Gordon's interview and diagnosis. The doctor explained it was necessary for her to discern the victim's knowledge of sexual matters in order to determine whether she had the capacity to fantasize about them. It was also necessary that Dr. Gordon discover what the victim knew about members of her family and the defendants and how she felt about them in order to gain some insight on whether the defendant could easily be coached into relating events which were not true.

Since Dr. Gordon's interview with the victim was conducted for purposes of diagnosis and treatment and the hearsay statements were reasonably related to her diagnosis, we hold the trial court's admission of the statements was not in error. Defendants have not raised the issue of whether the probative value of the statements was substantially outweighed by their prejudicial value and should have been excluded under Rule 403; we decline to address it here.

## VIII

[8] Defendants next contend the trial court erred in denying their motions for nonsuit regarding the second degree sex offense charges against them. They contend the evidence at trial was insufficient to support a finding that the victim was "mentally defective" under N.C. Gen. Stat. Sec. 14-27.1(1). A finding that the victim was mentally defective at the time of the alleged abuse is an element of both second degree sexual offenses each defendant faces.

N.C. Gen. Stat. Sec. 14-27.1(1) defines "mentally defective":

"Mentally defective" means i) a victim who suffers from *mental retardation*, or ii) a victim who suffers from a mental disorder, either of which temporarily or permanently *renders the victim substantially incapable of* appraising the nature of his or her conduct, or of *resisting the act of vaginal intercourse or a sexual act*, or of communicating unwillingness to submit to the act of vaginal intercourse or a sexual act. (Emphasis added.)

Defendants do not argue the victim was not mentally retarded but contend there was insufficient evidence that her mental retardation temporarily or permanently rendered her "substantially incapable of appraising the nature of . . . her conduct, or of resisting the act of vaginal intercourse or a sexual act, or of communicating unwillingness to submit to the act of vaginal intercourse or sexual act." We find the State's evidence was not sufficient to show the victim was substantially incapable of "appraising the nature of . . . her conduct" or "communicating unwillingness to submit to the act of vaginal intercourse or sexual act." However, we find the State did present sufficient evidence to support a finding that the victim was substantially incapable of "resisting the act of vaginal intercourse or sexual act."

If, in the light most favorable to the prosecution, any rational trier of fact could have found the essential element of substantial incapacity to resist the act of vaginal intercourse or sexual act beyond a reasonable doubt, we must uphold the trial court on this issue. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Brown*, 310 N.C. 563, 566, 313 S.E. 2d 585, 587 (1984).

Dr. Gordon testified upon cross-examination:

Q. And do you have an opinion satisfactory to yourself whether [the victim] is substantially capable of appraising the nature of her conduct?

A. I believe she is in certain circumstances, yes.

Q. And do you also have an opinion satisfactory to yourself whether [the victim] would be substantially capable of resisting any act of — sexual act or an act of intercourse?

A. Only under certain circumstances. Most children are taught to obey people in authority, like teachers and parents and so on, and when people in authority tell children to do something it's very difficult for them not to do it.

Q. Do you also have an opinion satisfactory to yourself that [the victim] would be capable of communicating an unwillingness to submit to any type of sexual act of intercourse?

A. She might be able to communicate an unwillingness, yes.

She also testified upon redirect examination:

Q. One brief question on what—one of the questions Mr. Steinberg asked. Do you have an opinion whether [the victim] could communicate an unwillingness to submit to a sexual act? You indicated that she could say—say that she—

A. She might say, "No, I don't want to do that." That's not to say that she wouldn't go ahead and do it simply because it was something that she was told to do.

Q. So all that interrelates to who's doing the act?

A. That's correct. If it's a person in authority, it's very difficult for children to—to resist that.

Q. Okay. So there may be some words said indicating an unwillingness?

A. Yes.

The victim's teacher also testified for the State. Upon cross-examination, she said she thought the victim was able to communicate to others what she wanted or did not want. In addition, the victim testified to her attempts to resist the sexual abuse:

Q. Did you say anything to—to Richard and your mother about all of this while it was going on?

A. Umm. I told them to stop.

Q. Did they stop?

A. No.

Q. Did you try to fight them to make them stop?

A. Umm.

Q. Are you all right, [victim's name]?

A. Yes.

Q. Let me ask that question again. Did you fight with Richard or your mother to make them stop?

A. I told them to let me up.

Q. You told them to let you up?

A. Yes.

---

---

Q. Did they let you up?

A. No.

Q. Did you try to hit them or anything to make them stop?

A. I told—

Q. Say that again whatever you said. Did you hit your mother?

A. I told her—I was fussing at them.

Q. You told—what was that now?

A. I was fussing at them.

Q. You fussed at them. Is that what you said?

A. Yes.

Q. But you did not hit them?

A. No.

                    *    *    *

Q. Did you want them to do that to you?

A. No.

Q. You fussed at them for doing it?

A. Yes.

We find that the element of "substantially incapable of . . . resisting the act of vaginal intercourse or sexual act" is not negated by the victim's ability to verbally protest or even to engage in some physical resistance of the abuse. The words "substantially incapable" show the Legislature's intent to include within the definition of "mentally defective" those persons who by reason of their mental retardation or disorder would give little or no physical resistance to a sexual act.

There was evidence at trial that the victim verbally protested the sexual abuse to which she was subjected and perhaps even attempted at times to physically resist. But there was also evidence that she complied with defendants' directions and submitted to their abuse. Viewed in the light most favorable to the

prosecution, we find the evidence sufficient to support the trial court's denial of defendants' motion for nonsuit.

IX

[9]  The trial court admitted testimony from the prosecuting witness which tended to show that between 19 December 1984 and 15 April 1985, defendant Oliver had committed more criminal sexual acts against her daughter than those with which she was charged.

Evidence of the commission of a crime by the accused, other than the one with which she was charged, is generally not admissible. N.C. Rules of Evidence, N.C. Gen. Stat. Sec. 8C-1, Rule 404. An exception to this Rule is when the second crime tends to show an intent or plan or design on the part of the defendant to commit the crime with which she is charged. Rule 404(b). This exception was also part of North Carolina evidentiary law before the adoption of the current Rules of Evidence. *See State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364 (1954). Our courts have been very liberal in admitting evidence of similar sex crimes in construing this exception to the general rule. *State v. Williams*, 303 N.C. 507, 513, 279 S.E. 2d 592, 596 (1981). *See also State v. DeLeonardo*, 315 N.C. 762, 770, 340 S.E. 2d 350, 356 (1986).

In *DeLeonardo*, the defendant was charged with two counts of first degree sexual offense. The alleged victims were his two sons. The defendant contended the trial judge erred in admitting evidence relating to the defendant's sexual activity involving his minor daughter. The Supreme Court held the challenged evidence tended to establish a common plan or scheme on the part of the defendant to sexually abuse his children. Thus, the evidence was properly admitted under Rule 404(b). *Id.* at 771, 340 S.E. 2d at 357.

We find in the case *sub judice* that the testimony of the prosecuting witness tends to establish a common plan or scheme on the part of defendant Oliver to sexually abuse her child. Therefore, the testimony of the prosecuting witness regarding other acts of sexual abuse was properly admitted.

X

Defendants object to testimony by three of the State's witnesses concerning hearsay statements made by the victim. De-

fendants contend the statements were inadmissible because they were not corroborative of the testimony given by the child. We find it unnecessary to search the lengthy testimony of the prosecuting witness to determine whether the testimony was noncorroborative since the defendants failed to show how they were prejudiced by the admission of that testimony. N.C. Gen. Stat. Sec. 15A-1443(a).

## XI

Defendants next contend they were denied the right to select a fair and impartial jury because the State did not disclose two witnesses to defendants before trial. The witnesses were the principal and guidance counselor at the high school of the victim, and they testified to her credibility. The State is not required to furnish defendants with a list of witnesses they will produce at trial. *State v. Smith*, 291 N.C. 505, 523-24, 231 S.E. 2d 663, 674-75 (1977). Defendants' contention is meritless.

## XII

[10] Defendants next contend a particular question put to a character witness violated Rules 608 and 405 of the North Carolina Rules of Evidence: "Do you have an opinion satisfactory to yourself based on your talking with [the victim] and with—talking with other people about [the victim]—do you know her reputation for truthfulness in the school community?" Defendants contend this question should have been stricken because it restricts the witness's answer to the victim's reputation in the school community and because it asks the witness's opinion about the victim's veracity on the basis of their talks together. We find this question does not violate the Rules of Evidence.

Both opinion and reputation evidence are admissible as evidence pertaining to a witness's credibility under Rules 608 and 405. As set forth above, the victim testified for the State at the trial. Defendants do not contend the victim's character had not been attacked so as to preclude the testimony of the character witness under Rule 608(a)(2).

The latter part of the prosecutor's question asks the witness to testify to the victim's reputation in the school community. To be admissible, reputation evidence must be evidence as to the witness's reputation in "any community or society in which the

person has a well-known or established reputation." *State v. Mc-Eachern*, 283 N.C. 57, 67, 194 S.E. 2d 787, 793 (1973). Our courts have held evidence of one's reputation among a church community, *State v. Stegmann*, 286 N.C. 638, 213 S.E. 2d 262, *modified*, 428 U.S. 902 (1976), and among members of a military community, *State v. Walsh*, 19 N.C. App. 420, 199 S.E. 2d 38, *cert. denied*, 284 N.C. 258, 200 S.E. 2d 658 (1973), to be admissible. Our review of the transcript shows that the victim's school community was a community in which she was well known and of an established reputation.

The first part of the prosecution's question asks the witness for her opinion of the victim's character for truthfulness. There must be a proper foundation laid for the admission of opinion testimony as to another's character for truthfulness. That foundation is personal knowledge. *State v. Morrison*, 84 N.C. App. 41, 49, 351 S.E. 2d 810, 815 (1987). Defendants do not contend the State failed to lay a proper foundation for the opinion testimony but object only to the form of the question. Had defendants expected the witness's answer would have been different had the question been broader, they should have expanded the question upon cross-examination or, as provided in Rule 608(b), confronted the witness with specific instances of the victim's behavior tending to show she was untruthful. Defendants failed to do either. Their contention on both counts is meritless.

## XIII

[11] Prior to trial, defendant Oliver moved for a bill of particulars. The State responded that the particular act alleged to have been committed by Oliver in violation of N.C. Gen. Stat. Sec. 14-27.5(a)(2) was "inserting her finger in the vagina" of the victim. Defendant Oliver contends there was insufficient evidence of penetration to support the conviction of second degree sexual offense under N.C. Gen. Stat. Sec. 14-27.5. *See* N.C. Gen. Stat. Sec. 14-27.1(4). This contention is meritless.

On direct examination, the victim responded that defendant Oliver had put her finger "where a tampon goes." Unlike the statement of the prosecuting witness in *State v. Hicks*, 319 N.C. 84, 90, 352 S.E. 2d 424, 427 (1987), this statement is not ambiguous. In *Hicks*, the prosecuting witness stated that the defendant had "put his penis in the back of me." The Supreme Court

held that, given the ambiguity of the statement in the absence of corroborative evidence (such as physiological or demonstrative evidence), the evidence at trial was insufficient to support a verdict of first degree sexual offense. *Id.* at 90, 352 S.E. 2d at 427. The victim had demonstrated to the satisfaction of the trial court that she understood that about which she testified. The trial court admitted the testimony and we do not find he abused his discretion by doing so.

Since the trial court was satisfied that the victim knew that a tampon was to be inserted into the vagina, the evidence is sufficient to prove penetration.

### XIV

[12] Defendant Oliver also contends there was insufficient evidence to find her guilty for aiding and abetting the second degree rape of her child. This contention is also meritless.

There was sufficient evidence to find that defendant Oliver had the opportunity but failed to avert the rape of her child. The victim testified her mother was in bed with her during the time of the rape by defendant Brummitt and that her mother was also touching her during that time as well. "[A] mother may be found guilty of assault on a theory of aiding and abetting solely on the basis that she was present when the child was assaulted but failed to take reasonable steps to avert the assault." *State v. Walden*, 306 N.C. 466, 468, 293 S.E. 2d 780, 782 (1982).

In connection with this issue, defendant Oliver also complains of the court's jury instructions regarding aiding and abetting. In light of *Walden*, we find the court's instructions to be without error.

### XV

Defendant Oliver next contends the trial court erred in its instructions to the jury concerning reasonable doubt and the definition of mentally defective. We find defendant's contentions to be without merit.

### A

[13] Defendant contends the instruction concerning reasonable doubt was in error because it omitted the phrase "to be convinced of moral certainty."

A court's instruction on reasonable doubt is not in error though it omits the phrase "moral certainty" as long as the instruction reaches the substance of the defendant's request. *State v. Satterfield*, 27 N.C. App. 270, 273, 218 S.E. 2d 504, 506 (1975). *See also State v. Herring*, 201 N.C. 543, 551, 160 S.E. 891, 895 (1931).

The defendants requested an instruction which defined reasonable doubt as "to be convinced to a moral certainty." The court instructed the jury that

> [A] reasonable doubt is a doubt based on reason and common sense arising out of some or all of the evidence that has been presented or lack or insufficiency of the evidence as the case may be. Proof beyond a reasonable doubt is proof that fully satisfies or entirely convinces you of the defendant's guilt.

In reviewing the court's instructions, we find the court conveyed to the jury the proper meaning of "reasonable doubt."

### B

Defendant contends the trial court improperly defined "mentally defective" for the jury.

The court instructed the jury they should find the victim mentally defective if they found beyond a reasonable doubt the victim "had an IQ of 66 or less and as a result was rendered so substantially incapable of appraising the nature of her conduct or resisting the act of the penetration of a finger into her vagina or communicating unwillingness to submit to that sexual act . . . ." The court's instruction regarding second degree rape was substantially the same. Defendant contends the court's instruction implied that if the jury found the victim's IQ to be 66 or less, the victim was also substantially incapable of either appraising the nature of her conduct or resisting the act of penetration of a finger into her vagina or communicating unwillingness to submit to that sexual act. We find the contention meritless. The instruction is without error.

Affirmed as to both defendants.

Judge JOHNSON concurs.

Chief Judge HEDRICK concurs in the result.