STATE OF NORTH CAROLINA v. TERRY NEAL CROCKER, JR.

No. COA08-1363

(Filed 2 June 2009)

**1. Sexual Offenses— first-degree sexual offense of a child under the age of 13—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the three counts of first-degree sexual offense with a child under the age of 13 based on alleged insufficiency of the evidence because, taken in the light most favorable to the State and allowing every reasonable inference to be drawn therefrom, the evidence from the victim and a doctor's testimony that defendant on three separate occasions used his hand to touch the inside of the victim's labia majora was sufficient to constitute substantial evidence of each element of the crime.

**2. Evidence— expert testimony—sexual abuse—credibility of minor victim—opening the door to response**

The trial court did not err in a multiple first-degree sexual offense with a child under the age of 13 and multiple taking indecent liberties with a child case by allowing an expert witness to testify to the credibility of the minor victim because: (1) when a defendant asks a question which is designed to elicit the exact type of response given, defendant has opened the door to the response, and the witness has a right to respond; and (2) defendant's cross-examination of the doctor was designed to elicit the type of response the doctor provided, and thus defendant cannot now contend that the doctor's response, which might have rightfully been excluded had it been offered by the State, unfairly prejudiced defendant and warranted a new trial.

Appeal by defendant from judgments entered 9 June 2008 by Judge Kimberly S. Taylor in Davidson County Superior Court. Heard in the Court of Appeals 9 April 2009.

*Attorney General Roy Cooper, by Assistant Attorney General Susannah B. Cox, for the State.*

*Paul F. Herzog for defendant-appellant.*

BRYANT, Judge.

Defendant appeals from judgments and commitments entered 9 June 2008 after a jury returned verdicts of guilty on three counts of first degree sexual offense with a child under the age of 13 and three counts of taking indecent liberties with a child. For the reasons stated herein, we find no error with the judgment of the trial court.

The evidence presented at trial tended to show that defendant befriended Robert[1] while working at the Grandover Resort in Greensboro, North Carolina. Robert lived with his parents and had two children—a daughter, Helen, and a son, Peter. At the time of trial, Helen was eleven and Peter fourteen.

Sometime during the summer of 2006, Robert and defendant began spending time together, and occasionally, Robert, along with Helen and Peter, would spend the night in defendant's apartment. The guests would sleep on an air mattress and a sofa in the living room.

1. Pseudonyms have been used for minors and some adults to protect the identity of the minors.

Helen testified that one night in September 2006 she was laying on the sofa watching T.V. when defendant sat down and began rubbing her feet. Defendant moved his hand up her leg and under her shorts.

State: Tell the ladies and gentlemen of the jury where would his hands be underneath your pants and underneath your panties?

Helen: Where I use the bathroom.

. . .

State: The area that you pee out of?

Helen: Yes

State: Would his hand touch that area?

Helen: Yes

State: What would his hand do to that area? Can you describe that for the ladies and gentlemen of the jury?

Helen: It would go between the skin type area.

State: Okay. The area that you use the bathroom out of?

Helen: Yes.

State: How did it feel when he would touch you in those areas?

Helen: It felt like there was a pressure point that he would rub against and I felt like I was about to pass out.

. . .

State: All right. Now, when you say that he would push or rub on that pressure point, . . . did that cause you any discomfort or pain?

Helen: Yes, it hurt.

Helen also testified that defendant reached inside her t-shirt and touched her chest. This same conduct occurred on three occasions: (1) one night in September 2006, (2) once before her 19 October 2006 birthday, and (3) sometime between November and 19 December 2006.

Sometime during December 2006, Helen's mother discovered blood in Helen's underwear. Not knowing whether Helen had begun her menstrual cycle or if she had been hurt—and "[Helen] was not very forthcoming with what had happened"—Helen was taken to see

Dr. Melissa Lowe, a pediatrician with Wendover Pediatricians in Greensboro, North Carolina. At trial, Dr. Lowe was admitted as an expert witness. She testified that during her initial conversation she asked what Helen thought may have caused her bleeding. When Helen failed to respond, Dr. Lowe asked "if anyone had touched her in her private." Helen became "very upset. She, when she nodded because she had tears coming down her face, she was not able—I think she was choked up at the moment, not really saying anything verbally. And then she managed to say . . . that Terry touched her down there." Dr. Lowe informed Helen's mother and filed a report with law enforcement authorities.

On 19 December 2006, Helen met with Kimberly Madden, a forensic interviewer with Family Services of the Piedmont in Greensboro, North Carolina. Helen explained how defendant had put his hand down her shirt and in her pants touching the part of her body where she urinates. Helen described how defendant touched a pressure point that made her feel "kind of faint" that was near the part of her body where she urinates. She told Ms. Madden these events occurred at defendant's apartment, on defendant's couch.

On 17 January 2007, Helen saw Dr. Angela Stanley, a pediatrician with the Moses Cone Health System. At trial, Dr. Stanley, testifying as an expert and using diagrams for illustration, described the anatomy of the female genital area. Dr. Stanley related that the labia majora or outer layer is tougher "so it is not susceptible to painfulness, not highly innervated"; that "its normal role is to pad the genital area." She noted that the labia majora would have to be separated in order to expose the inside structures. When asked to describe the inside structures, Dr. Stanley stated, "Those are different types of structures. This area is . . . more susceptible to injury, hence the covering."

State:     In hearing the description that [Helen] had given in reading material that you had been given as far as sensory detail that she gave also describing the pain and discomfort that she was feeling, would you find it more consistent with touching the structures on the inside of the labia majora or outside the labia majora?

Stanley: It would be more consistent with touching on the inside rather than . . . [the] padded structures on the outside.

State:     The detail she gave about a pressure point and shaking and these kinds of details, would that be consistent with

touching on the outside of the labia majora or inside the labia majora?

Stanley: The description the child was giving would be stimulation of these structures [sic] would be possible with extreme pressure and friction on the outside over these structures or also on the inside coupled with the complaint of pain, it would be more suggestive of touching these structures on the inside.

. . .

State: The descriptions that you gave would be more consistent with touching the inside the labia majora or these internal structures here; is that correct?

Stanley: That's correct.

At the close of the State's evidence and again after the close of all evidence, defendant made a motion to dismiss based on insufficiency of the evidence. Both motions were denied.

The jury returned verdicts of guilty on three counts of first degree sexual offense with a child under the age of thirteen and three counts of taking indecent liberties with a child. The trial court entered judgments consistent with the jury verdicts and committed defendant to a term of 192 months to 240 months for two counts of first degree sex offense and two counts of indecent liberties to be followed by a term of 192 months to 240 months for one count of first degree sex offense and one count of indecent liberties in the custody of the North Carolina Department of Correction. Defendant appeals.

Defendant raises two issues on appeal: whether the trial court erred by (I) failing to dismiss the three counts of first degree sexual offense and (II) allowing opinion testimony on the credibility of the victim.

*I*

[1] Defendant first argues that the trial court erred in failing to dismiss the three counts of first degree sexual offense upon defendant's motion to dismiss for insufficiency of the evidence. We disagree.

"When reviewing a sufficiency of the evidence claim, this Court considers whether the evidence, taken in the light most favorable to the state and allowing every reasonable inference to be drawn there-

from, constitutes substantial evidence of each element of the crime charged." *State v. Taylor*, 362 N.C. 514, 538, 669 S.E.2d 239, 261 (2008) (citation and internal quotations omitted).

> Evidence is substantial if it is relevant and adequate to convince a reasonable mind to accept a conclusion. In considering a motion to dismiss, the trial court must analyze the evidence in the light most favorable to the State and give the State the benefit of every reasonable inference from the evidence.

*State v. Williams*, 186 N.C. App. 233, 234, 650 S.E.2d 607, 608 (2007) (citation omitted). "Moreover, circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence." *State v. Turnage*, 362 N.C. 491, 494, 666 S.E.2d 753, 755 (2008) (citation and internal quotations omitted).

Under our North Carolina General Statutes, section 14-27.4(a),

> A person is guilty of a sexual offense in the first degree if the person engages in a sexual act:

> (1) With a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim[.]

N.C. Gen. Stat. § 14-27.4(a) (2007). A "sexual act" includes the penetration, however slight, by any object into the genital or anal opening of another's body. *State v. Fuller*, 166 N.C. App. 548, 556, 603 S.E.2d 569, 575 (2004).

Here, Helen testified that on three separate occasions defendant reached beneath her shorts and touched between "the skin type area" in "[t]he area that you pee out of[.]" Helen testified defendant would rub against a pressure point causing her pain and made her feel as if she was about to pass out.

Dr. Stanley testified that "with extreme pressure and friction on the outside [of the labia majora] or also on the inside coupled with the complaint of pain, it would be more suggestive of touching these structures on the inside."

This evidence, that defendant on three separate occasions used his hand to touch the inside of the victim's labia majora, taken in the light most favorable to the State and allowing every reasonable inference to be drawn therefrom, was sufficient to constitute substantial evidence of each element of the crime of first degree sexual offense.

Therefore, the trial court did not err in denying defendant's motion to dismiss. Accordingly, this assignment of error is overruled.

## II

**[2]** Next, defendant argues the trial court erred in allowing an expert witness to testify to the credibility of the minor victim. Defendant argues the testimony of Dr. Lowe was a violation of N.C. Gen. Stat. § 8C-1, Rules 405 and 608. We disagree.

"This Court has repeatedly held that N.C.G.S. § 8C-1, Rule 608 and N.C.G.S. § 8C-1, Rule 405(a), when read together, forbid an expert's opinion testimony as to the credibility of a witness." *State v. Jones,* 339 N.C. 114; 146, 451 S.E.2d 826, 843 (1994) (citations omitted).[2],[3] *See also State v. Aguallo,* 318 N.C. 590, 350 S.E.2d 76 (1986) (holding a new trial was warranted where the State's witness, testifying as an expert, stated that she found the victim believable); *State v. Heath,* 316 N.C. 337, 341 S.E.2d 565 (1986) (holding it was error to permit the State to question an expert as to whether the victim could "make up a story about the sexual assault" and the witness responded with "[t]here is nothing . . . that indicates that she has a record of lying."). However, "[d]efendant cannot invalidate a trial by . . . eliciting evidence on cross-examination which he might have rightfully excluded if the same evidence had been offered by the State." *State v. Burgess,* 134 N.C. App. 632, 636, 518 S.E.2d 209, 212 (1999) (citations omitted). When a defendant asks a question which is designed to elicit the exact type of response given, the defendant has opened the door to the response, and the witness has a right to respond. *See State v. Neely,* 4 N.C. App. 475, 477, 166 S.E.2d 878, 879 (1969) (holding no prejudicial error when defendant's question "[y]ou say you [sic] scared of these two defendants here?" opened the door to the elicited response "[i]f anybody had a record like them, you'd be scared of them too.").

---

2. N.C.G.S. § 8C-1, Rule 405 (2007). (a) Reputation and opinion—In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct. Expert testimony on character or a trait of character is not admissible as circumstantial evidence of behavior.

3. N.C.G.S. § 8C-1, Rule 608 (2007).(a) Opinion and reputation evidence of character—The credibility of a witness may be attacked or supported by evidence in the form of reputation or opinion as provided in Rule 405(a), but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

STATE v. CROCKER

[197 N.C. App. 358 (2009)]

Here, during the cross-examination of Dr. Lowe, defense counsel asked the following questions:

Defense:    You testified that when you spoke with [Helen] you got all the information necessary to make a report to the police?

Lowe:       I got all the information that I needed to, that was needed to make a report for an investigation.

Defense:    Did you ever, Dr. Lowe, ask [Helen] if anybody else might have done this to her?

Lowe:       I asked her if anyone had touched her.

Defense     Did you ever ask her—I guess, did you ever ask her if she was telling you the truth?

Lowe:       I did not specifically ask her. I felt like what she was telling me was the truth.

Defense:    I object.

State:      Her own question, your Honor.

The Court:  Overruled.

Defendant's cross-examination was designed to elicit the type of response Dr. Lowe provided; therefore, defendant cannot now contend that Dr. Lowe's response, which might have rightfully been excluded had it been offered by the State, unfairly prejudices defendant and warrants a new trial. Accordingly, this assignment of error is overruled.

No error.

Judges GEER and STEPHENS concur.