STATE OF NORTH CAROLINA v. SHANNON DON HORTON

No. COA09-7

(Filed 15 September 2009)

**1. Evidence— testimony of counselor—credibility of victim**

There was prejudicial error in an indecent liberties prosecution where an expert in the treatment of abused children, who was also the victim's counselor, testified that the credibility of children is enhanced when they provide details such as those provided by this victim.

**2. Evidence— testimony of counselor—opinion that victim abused**

There was prejudicial error in an indecent liberties prosecution where the victim's counselor testified that the victim had more likely than not been sexually abused. This exceeds the permissible opinion testimony that a child exhibits characteristics consistent with abused children.

**3. Evidence— testimony    of    counselor—substantially corroborative**

There was no prejudicial error in an indecent liberties prosecution in the admission of hearsay testimony from the victim's

counselor. That testimony provided new information, but tended to strengthen the child's testimony. Substantially corroborative testimony is not rendered incompetent by the fact that there is some variation.

**4. Appeal and Error— records and briefs—protecting identity of juveniles**

Appellate records and briefs are public records and the State and all defendants are cautioned to guard juveniles' identities by not referring to juveniles or those related to them by name.

Appeal by Defendant from judgments entered 20 March 2008 by Judge Robert P. Johnston in Superior Court, Burke County. Heard in the Court of Appeals 10 June 2009.

*Attorney General Roy Cooper, by Assistant Attorney General Jane Rankin Thompson, for the State.*

*Duncan B. McCormick for Defendant-Appellant.*

McGEE, Judge.

Shannon Don Horton (Defendant) was indicted on two counts of taking indecent liberties with a child on 5 July 2005. Defendant was also indicted on two counts of first-degree rape on 13 February 2006. Defendant was found guilty by a jury of two counts of taking indecent liberties with a child and one count of first-degree rape on 20 March 2008. The trial court sentenced Defendant to 240 to 297 months in prison for one count of first-degree rape and a consecutive sentence of seventeen to twenty-one months for one count of taking indecent liberties with a child. The trial court imposed a suspended sentence of seventeen to twenty-one months for the second count of taking indecent liberties with a child. Defendant appeals.

The State's evidence at trial tended to show the following: The alleged child victim (the child) knew Defendant through her father. Defendant was not married at the time the alleged abuse occurred, but was married to Chastity Horton (Chastity) at the time of trial.

In July 2004, the child, then twelve years old, and her female cousin (the cousin), then sixteen years old, spent the night at a trailer (the trailer) that Defendant and Chastity were renting. During a cook-out earlier that day, Defendant had given the child vodka. That evening, the child and the cousin slept on two couches in the trailer's living room. Defendant woke the child up in the middle of the night,

STATE v. HORTON

[200 N.C. App. 74 (2009)]

forced her to touch his penis with her hand, and had sexual intercourse with her. Defendant told the child not to tell anyone what had happened because both of them would get in trouble.

The following morning, the child and Defendant stayed at the trailer while Chastity and the cousin left to get breakfast. Defendant again forced the child to touch his penis with her hand and Defendant twice put his tongue in the child's vagina. Defendant ceased these acts when Chastity and the cousin returned to the trailer. A week or two later, the child again spent the night at the trailer and Defendant again put his tongue in the child's vagina and tried to put his penis in her mouth. When the child refused, Defendant ejaculated on her chest.

Initially, the child did not tell anyone what had occurred with Defendant. About a month after the incidents, the child told her older sister (the sister) about the sexual abuse, and made the sister promise not to tell their mother. Sometime later, their mother overheard the child and the sister arguing and heard the child state: "It's not like I can keep a twenty-four-year-old off of me." The child's mother asked her what had happened, and the child eventually told her mother what Defendant had done to her.

Her mother took the child to the Sheriff's Office and to the Burke County Child Advocacy Center, also known as Gingerbread House, on 6 October 2004. At Gingerbread House, the child was interviewed and given a physical examination by Elizabeth Browning, a sexual assault nurse examiner. Ms. Browning testified that the child had no physical abnormalities in her physical exam. Dr. John Betancourt, a board-certified child sexual abuse examiner, testified that he physically examined the child in October 2004. He testified that the child's exam showed no physical evidence of abuse, but that he could not rule out that she had had sexual intercourse in July 2004. Adrienne Opdyke, a victim's advocate, also interviewed the child at Gingerbread House in October 2004. Ms. Opdyke testified that she referred the child to Ashley Fiore (Ms. Fiore), a licensed clinical social worker, for counseling.

The child began seeing Ms. Fiore in October 2004 and continued seeing her until September 2005. Over time during the child's treatment with Ms. Fiore, the child provided additional details of her abuse by Defendant, and her conflicting feelings towards Defendant. The child's mother told Ms. Fiore that the child had been depressed, angry, and withdrawn since the alleged incidents with Defendant. At

trial, Ms. Fiore testified as an expert in the treatment of sexually abused children.

Defendant presented the testimony of his sister, Misty Christopher. Ms. Christopher testified that she did not see Defendant give the child alcohol at the cookout. She also testified that the child seemed happy on the morning after the first alleged sexual assault.

Defendant testified he did not provide the child with alcohol. Defendant further stated that on the night of the first alleged assault he went to bed before anyone else and did not get up until the next morning. Defendant testified that, when the child spent the night at the trailer a few weeks later, he did not see her after he went to bed. Defendant also testified that while Chastity and the cousin were out getting breakfast the next morning, he was feeding his infant daughter. Defendant testified that he never inappropriately touched the child.

I.

[1] Defendant contends in his first argument that the trial court committed prejudicial error by admitting testimony from Ms. Fiore that the credibility of alleged victims of child abuse is enhanced when they provide specific details about the alleged abuse. We agree.

Our Supreme Court has held:

"A trial court's ruling on an evidentiary point will be presumed to be correct unless the complaining party can demonstrate that the particular ruling was in fact incorrect. Even if the complaining party can show that the trial court erred in its ruling, relief ordinarily will not be granted absent a showing of prejudice."

*State v. Cheek*, 351 N.C. 48, 68, 520 S.E.2d 545, 557 (1999) (quoting *State v. Mickey*, 347 N.C. 508, 520, 495 S.E.2d 669, 676 (1998) (internal citations omitted). Our Court must determine whether admitting Ms. Fiore's credibility testimony constituted error, and if so, whether the error was prejudicial.

"Our appellate courts have consistently held that the testimony of an expert to the effect that a prosecuting witness is believable, credible, or telling the truth is inadmissible evidence." *State v. Bailey*, 89 N.C. App. 212, 219, 365 S.E.2d 651, 655 (1988) (citations omitted). Further, when a case involves alleged sexual misconduct against a child victim and there is no physical evidence, "the trial court should not admit expert opinion that sexual abuse has *in fact* occurred

because, absent physical evidence supporting a diagnosis of sexual abuse, such testimony is an impermissible opinion regarding the victim's credibility." *State v. Stancil*, 355 N.C. 266, 266-67, 559 S.E.2d 788, 789 (2002) (citations omitted). "[W]hile it is impermissible for an expert, in the absence of physical evidence, to testify that a child has been sexually abused, it is permissible for an expert to testify that a child exhibits 'characteristics [consistent with] abused children.' " *State v. Grover*, 142 N.C. App. 411, 419, 543 S.E.2d 179, 184 (2001) (quoting *State v. Aguallo*, 322 N.C. 818, 821, 370 S.E.2d 676, 677 (1988)).

In the present case, Ms. Fiore testified as a witness with expertise in the treatment of sexually abused children. Ms. Fiore testified that, over the course of counseling, the child described details of the alleged sexual abuse, including a moment when Defendant's knee was hurting the child's hip. Defendant allegedly said he was "[s]orry" when he noticed he was hurting the child. At trial, the prosecutor asked Ms. Fiore: "As far as treatment for victims, for counseling victims, why would that detail be significant' " After the trial court overruled defense counsel's objection to this question, Ms. Fiore responded: "In all of my training and experience, when children provide those types of specific details it enhances their credibility." Defense counsel objected to Ms. Fiore's answer and moved to strike it from the record, but Defendant's objection and motion to strike were both overruled. Because there was no physical evidence presented at trial, Ms. Fiore's statement was "an impermissible opinion regarding the victim's credibility." *Stancil*, 355 N.C. at 266-67, 559 S.E.2d at 789.

An error, not involving a constitutional violation, is prejudicial "when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a) (2007). It is Defendant's burden to prove prejudice. *Id.*

The State's evidence consisted of testimony from the child, her family members, and various experts. All of the State's evidence relied in whole or in part on the child's statements concerning the alleged sexual abuse. There was no physical evidence presented that bolstered the State's case that the child was sexually abused, or that Defendant was the perpetrator of any such abuse. There was no testimony presented by the State that did not have as its origin the accusations of the child. For this reason, the credibility of the child was central to the State's case.

STATE v. HORTON

[200 N.C. App. 74 (2009)]

Defendant's evidence consisted of his testimony that he did not sexually abuse the child and that his contact with her was minimal. Defendant's sister also testified that Defendant never gave the child alcohol and that the child seemed happy the morning after the alleged first instance of abuse. The child admitted that she chose to remain in the house with Defendant the morning following the first alleged sexual assault and that she voluntarily returned to Defendant's house on two more occasions after that time. Further, the child's account of what happened evolved over time, and new allegations of what happened to her came out gradually during her therapy with Ms. Fiore.

We realize it may be common for victims of sexual abuse, and for children in particular, to provide additional details over time to a therapist concerning painful events as rapport and trust develops. However, it is the province of the jury, not this Court, to make credibility determinations based upon the evidence presented at trial. *State v. Legins*, 184 N.C. App. 156, 159, 645 S.E.2d 835, 837 (2007) (citation omitted). Except for Ms. Fiore's testimony, the evidence presented at trial amounted to conflicting accounts from the child, Defendant, and their families.

Because Ms. Fiore was an expert in treating sexually abused children, her opinion could have held significant weight with the jury. Considering Ms. Fiore's testimony in light of the other evidence, there is a reasonable possibility that the testimony in question influenced the jury's verdict by enhancing the credibility of the child in the jurors' minds. We hold that admission of Ms. Fiore's testimony concerning the child's credibility constituted prejudicial error, and thus Defendant is entitled to a new trial.

II.

[2] We address Defendant's remaining arguments because these issues might reoccur at Defendant's new trial.

In Defendant's second argument, he contends the trial court committed prejudicial error by admitting Ms. Fiore's testimony that the child "had more likely than not been sexually abused where the opinion was not supported by any physical evidence". We agree.

As noted above, "it is permissible for an expert to testify that a child exhibits 'characteristics [consistent with] abused children.' " *Grover*, 142 N.C. App. at 419, 543 S.E.2d at 184 (quoting *State v. Aguallo*, 322 N.C. 818, 821, 370 S.E.2d 676, 677 (1988)). In the present case, defense counsel asked Ms. Fiore, "as you just admitted earlier,

maybe [the child] just didn't want to participate in this type of counseling, because maybe she wasn't abused' " As Ms. Fiore began to answer "I would not have taken her as a client or as[,]" defense counsel objected, but Ms. Fiore finished her answer, saying she would not have taken the child as a client "[o]r have used this treatment model with her unless she had met the criteria, which [included] that . . . she had more likely than not been sexually abused and that had been found[.]" Ms. Fiore's statement that the child had "more likely than not been sexually abused" exceeds permissible expert opinion testimony that a child "exhibits 'characteristics [consistent with] abused children.' " *Grover*, 142 N.C. App. at 419, 543 S.E.2d at 184. We hold that allowing expert testimony stating the child had "more likely than not been sexually abused" was error.

### III.

**[3]** In Defendant's third argument, he contends the trial court committed prejudicial error by admitting hearsay testimony from Ms. Fiore about Defendant "grooming" the child. We disagree.

" 'Hearsay' is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2007). "A prior consistent statement may be admissible as nonhearsay even when it contains new or additional information when such information tends to strengthen or add credibility to the testimony which it corroborates." *State v. Levan*, 326 N.C. 155, 167, 388 S.E.2d 429, 435 (1990) (citations omitted).

Ms. Fiore's testimony consisted of descriptions of "grooming" techniques commonly used by perpetrators of sexual abuse to increase the likelihood of success. Ms. Fiore testified such techniques include tickling, making excuses to touch the child's body, and doing things to make it seem like the perpetrator accidentally touched the child's private parts. Ms. Fiore testified that, after she began educating the child about these different aspects of "grooming," the child volunteered additional information. Ms. Fiore's testimony included statements the child made to Ms. Fiore that the child did not testify to at trial. For example, Ms. Fiore testified that the child stated Defendant tickled her, gave her cigarettes, treated her like a girlfriend, made her feel special, allowed her to drive his car, and that the child had a crush on Defendant. Defendant objected to these statements of Ms. Fiore, arguing they did not corroborate the testimony of the child.

STATE v. HORTON

[200 N.C. App. 74 (2009)]

" '[W]here testimony which is offered to corroborate the testimony of another witness does so substantially, it is not rendered incompetent by the fact that there is some variation.' " *State v. Loyd,* 354 N.C. 76, 104, 552 S.E.2d 596, 617 (2001) (quoting *State v. Rogers,* 299 N.C. 597, 601, 264 S.E.2d 89, 92 (1980)). Although Ms. Fiore's testimony provided "new or additional information[,]" her testimony tended to "strengthen" the child's testimony that she had been sexually abused by Defendant, as it tended to support the proposition that Defendant had "groomed" the child to facilitate his alleged sexual abuse of the child. *Id.* We hold that it was not error to admit Ms. Fiore's "grooming" testimony. This argument is without merit.

### IV.

[4] In his final argument, Defendant contends that the trial court erred in denying his motion for a mistrial. We disagree.

Pursuant to N.C. Gen. Stat. § 15A-1061:

Upon motion of a defendant or with his concurrence the judge may declare a mistrial at any time during the trial. The judge must declare a mistrial upon the defendant's motion if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case.

N.C. Gen. Stat. § 15A-1061 (2007). Further, "a trial court's decision concerning a motion for mistrial will not be disturbed on appeal unless there is a clear showing that the trial court abused its discretion." *State v. Bonney,* 329 N.C. 61, 73, 405 S.E.2d 145, 152 (1991) (citation omitted).

At the end of Defendant's testimony, Defendant's attorney asked the Defendant:

[DEFENSE COUNSEL]: Have you ever at any point and time wavered even a little bit in asserting to anyone that would listen to you that you are innocent of these charges?

A: I am innocent.

During re-cross examination, the prosecutor asked Defendant:

[STATE]: Did you assert to law enforcement that you're innocent?

[DEFENSE COUNSEL]: Objection, Your Honor.

THE COURT: Sustained.

Defendant's attorney then asked Defendant on re-direct:

> [DEFENSE COUNSEL]: You never told law enforcement that you weren't innocent and you told them that you were absolutely innocent, didn't you?
>
> [DEFENDANT]: Yes, sir.

At the close of all the evidence, Defendant moved for a mistrial as a result of the State's question as to whether Defendant asserted his innocence to law enforcement. The trial court denied Defendant's motion.

We cannot hold, on these facts, that the trial court abused its discretion in denying Defendant's motion for a mistrial based wholly upon the State's question, when the trial court sustained Defendant's objection to that question, and Defendant testified that he had always maintained to law enforcement that he was innocent of the crimes charged. *Id.* Further, this issue *should not* reoccur at the new trial, as we trust the State will not again impermissibly reference any subject that could imply guilt based upon Defendant's constitutional right to remain silent, whether Defendant chooses to exercise that right or not.

V.

As a final note, we emphasize that appellate briefs and records are public records. It is the policy of this State to avoid unnecessary embarrassment, persecution, notoriety or other hardship to juveniles by scrupulously guarding their identities. For this reason, we do not refer to juveniles by name, and make every reasonable attempt to guard juveniles' identities by not using real names for others related to them. For obvious reasons, adult defendants are referred to by name, even when they are accused of the abuse of juveniles. We caution the State and all defendants to ensure the same care is given in the briefs and records submitted to this Court.

New trial.

Judges JACKSON and ERVIN concur.