An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1023

NORTH CAROLINA COURT OF APPEALS

Filed: 3 June 2014

STATE OF NORTH CAROLINA

v.                                    Wake County
                                      Nos. 11 CRS 207991-95
ROBERTO TORRES-ROBLES


Appeal by defendant from judgments entered 15 February 2013 by Judge Paul C. Ridgeway in Wake County Superior Court. Heard in the Court of Appeals 22 January 2014.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Laura E. Crumpler, for the State.*
>
> *Mark Montgomery, for defendant-appellant.*


CALABRIA, Judge.


Roberto Torres-Robles ("defendant") appeals from judgments entered upon jury verdicts finding him guilty of first degree sexual offense with a child ("first degree sex offense"), attempted first degree sexual offense with a child ("attempted sex offense"), and three counts of indecent liberties with a child ("indecent liberties"). We find no error.

## I. Background

C.H. ("Cory"[1]) was six years old when his mother began dating defendant. Cory, his mother, and his older brother moved in with defendant that same year. Defendant subsequently began touching Cory inappropriately while Cory's mother was at work and they were alone in the home.

On the first occasion, defendant touched Cory's penis over the clothes while Cory was still dressed. The second time defendant touched Cory, he touched Cory's penis underneath the clothes. On several other occasions, defendant attempted to force Cory to touch defendant's penis. Defendant also touched Cory's buttocks and anus on multiple occasions. Defendant put his fingers inside Cory's anus more than once.

In 2010, Cory's family moved out of defendant's home and into their own residence. After defendant was arrested following an incident of domestic violence against Cory's mother at her residence, Cory told his mother that defendant had been abusing him. Later, Cory discussed the abuse with law enforcement officers and social workers. He also started seeing a therapist and taking medication to help him sleep at night.

Defendant was subsequently charged with three counts of indecent liberties and one count each of attempted sex offense

---

[1] We use this pseudonym to protect the juvenile's privacy and for ease of reading.

and first degree sex offense. At trial, the State presented several witnesses, including Dr. David Randall Johnson ("Dr. Johnson"), Christine Rafter ("Rafter"), and Cory's mother. Dr. Johnson testified as an expert in the field of child and adolescent psychiatry regarding his diagnosis of Cory. Rafter, a social worker, testified regarding her involvement with Cory and his family. Cory's mother also testified regarding the events surrounding Cory's allegations against defendant.

On 15 February 2013, the jury returned verdicts finding defendant guilty of all offenses. The trial court sentenced defendant to a minimum of 192 months and a maximum of 240 months for the first degree sex offense, with credit for 681 days spent in confinement prior to the entry of judgment. Defendant was also sentenced to a minimum of 125 and a maximum of 159 months for the attempted sex offense as well as a minimum of 13 and a maximum of 16 months for the indecent liberties offenses, all to be served consecutively in the custody of the North Carolina Division of Adult Correction. Defendant appeals.

As an initial matter, defendant argues that the trial court erred in evidentiary rulings and in the jury instructions. Defendant concedes that he did not object to these errors at trial. Therefore, we must apply the plain error standard.

## II. Standard of Review

Our Supreme Court has elected to review unpreserved alleged errors under the plain error standard when the alleged errors are in evidentiary rulings and jury instructions. *State v. Gregory*, 342 N.C. 580, 584, 467 S.E.2d 28, 31 (1996). Plain error is to be applied cautiously, when the claimed error is "a *fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]" *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citation omitted). "Under the plain error rule, [the] defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result." *State v. Jordan*, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993).

## III. Rules of Evidence

According to defendant, the testimony of three witnesses, Dr. Johnson, Rafter, and Cory's mother, amounted to an impermissible bolstering of Cory's allegations against defendant because the witnesses allegedly "vouched" for Cory's truthfulness. We disagree.

Pursuant to Rule 608(a) of the North Carolina Rules of Evidence, "evidence of truthful character is admissible only

after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise." N.C. Gen. Stat. § 8C-1, Rule 608(a) (2013). In all cases in which evidence of character or a trait of character of a person is admissible, Rule 405 allows testimony in the form of an opinion, but "[e]xpert testimony on character or a trait of character is not admissible as circumstantial evidence of behavior." N.C. Gen. Stat. § 8C-1, Rule 405(a) (2013). Rule 702 allows expert witnesses to testify in the form of an opinion when a witness qualified as an expert by knowledge, skill, experience, training, or education, bases the testimony upon sufficient facts or data, the testimony is the product of reliable principles and methods, and the witness has applied those principles and methods reliably to the facts. N.C. Gen. Stat. § 8C-1, Rule 702(a) (2013). "This Court has repeatedly held that N.C.G.S. § 8C-1, Rule 608 and N.C.G.S. § 8C-1, Rule 405(a), when read together, forbid an expert's opinion testimony as to the credibility of a witness." *State v. Crocker*, 197 N.C. App. 358, 364, 676 S.E.2d 658, 661 (2009). However, "Rule 702 permits expert witnesses to explain the bases of their opinions. Thus, a witness who renders an expert opinion may also testify as to the reliability of the information upon which he based his

opinion." *State v. Marine*, 135 N.C. App. 279, 281, 520 S.E.2d 65, 66-67 (1999) (citation omitted). "[T]he mental and emotional state of the victim before, during, and after a . . . sexual assault is relevant testimony that can help assist the trier of fact in understanding the basis of that expert's opinion." *Id.*, 520 S.E.2d at 67.

### IV. Witness Testimony

#### A. Dr. Johnson

During the State's direct examination, Dr. Johnson testified regarding Cory's psychological examination, that Cory suffered from post-traumatic stress disorder ("PTSD"), and that Cory's symptoms were consistent with someone who had experienced extended trauma. Dr. Johnson also testified this diagnosis was based on information he obtained after examining Cory, discussing the case with social worker Cindy Frye ("Ms. Frye"), and his expert knowledge of the psychological characteristics of abused children in general. On cross-examination, defense counsel asked Dr. Johnson whether something other than sexual abuse could have caused Cory's PTSD:

> Q. Is it possible that some of the post stress disorder could have come from something other than any type of sexual contact with [defendant]?
>
> A. Given what Ms. Frye shared about the

case, I would think that would be unlikely. One thing I do document in my first note is that at the time he revealed this to his mother, that the alleged perpetrator was in jail for domestic violence. And certainly children who have witnessed or been in the midst of domestic violence can have post traumatic stress symptoms, as well.

At trial, defendant did not object to Dr. Johnson's testimony regarding the cause of Cory's PTSD diagnosis. On appeal, defendant contends that Dr. Johnson's cross-examination testimony stating that another cause of Cory's PTSD was "unlikely" amounts to an improper bolstering of Cory's testimony. Specifically, defendant contends that Dr. Johnson's testimony subtly communicated his personal belief in Cory's allegations against defendant.

Defendant relies on *State v. O'Connor*, 150 N.C. App. 710, 564 S.E.2d 296 (2002), *State v. Horton*, 200 N.C. App. 74, 682 S.E.2d 754 (2009), and *State v. Aguallo*, 318 N.C. 590, 350 S.E.2d 76 (1986), for the proposition that Dr. Johnson's testimony was inadmissible. The Court granted a new trial in all three cases. In *O'Connor*, this Court found plain error where admission of an expert witness's written report stating the victim's disclosure was "credible" was distributed to the jury as an exhibit and the State's case was dependent on the victim's credibility. 150 N.C. App. at 712, 564 S.E.2d at 297.

In *Horton*, an expert witness testified over objection that the credibility of child victims is enhanced when they provide details of alleged abuse. 200 N.C. App. at 78, 682 S.E.2d at 757. This Court held the admission of the expert's testimony could have held significant weight with the jury, and the admission of the expert's testimony was prejudicial error. *Id.* at 79, 682 S.E.2d at 758. In *Aguallo*, the expert testified over objection to an opinion that the child victim was "believable." 318 N.C. at 598-99, 350 S.E.2d at 81.

Unlike the three cases defendant relies on, the instant case is similar to *State v. Marine*, 135 N.C. App. 279, 520 S.E.2d 65 (1999). In *Marine*, the State's expert witness testified that in her opinion the victim suffered from PTSD. *Id.* at 284, 520 S.E.2d at 68. The witness testified that she based her opinion on the victim's behavior during observation, her review of statements that the victim gave to the police, and her expert knowledge of the indications of PTSD. Finally, the witness testified that the victim's behavior and statements to the police indicated that the victim "was being very honest." *Id.* at 281, 520 S.E.2d at 66. According to the *Marine* Court, the witness's testimony that the victim was being honest simply explained why she felt the victim suffered from PTSD. The Court

held that the witness's testimony "went to the reliability of her diagnosis, not to [the victim's] credibility." *Id.* at 284, 520 S.E.2d at 68.

When Dr. Johnson testified regarding how "unlikely" it was that something other than sexual abuse could have caused Cory's PTSD, he also indicated that children who witness domestic violence could have PTSD symptoms. Therefore, the purpose of Dr. Johnson's disputed testimony was to explain the possible causes of Cory's PTSD. Such testimony by an expert witness is relevant testimony that can assist the trier of fact to understand the basis of the expert's opinion pursuant to *Marine*. Furthermore, Dr. Johnson's testimony relates directly to the causes which resulted in the PTSD diagnosis, and therefore went to the reliability of his diagnosis, not Cory's credibility.

## B. Christine Rafter

Defendant also contends Rafter's testimony concerning the scheduling of a child medical evaluation improperly vouched for Cory's credibility:

> Q. When you're meeting there with [Cory] you've already gotten information from his mother, you're talking to him about what happened, are you trying to get each and every detail about what happened?
>
> A. At this point I wasn't because the child is typically going to have to go through

another interview when he has the medical evaluation, and he was already very shy and closed off, so I didn't want to continue to push him knowing that he was going to have to do this again, anyway.

Q. And so what is the – why are you trying to get some from him at least?

A. Because in order to schedule the medical evaluation, I have to have some kind of clear disclosure that having happened. [sic]

. . .

Q. And you had said initially that when you first meet with the children, you're just trying to get a sense of whether something's happened because you know you'll be scheduling that child medical evaluation. Is that typically a lengthier interview?

A. Yes, much longer.

Defendant did not object to Rafter's testimony at trial, and mistakenly contends that Rafter testified as an expert witness. Nothing in the record indicates that the State ever tendered Rafter as an expert, or that the trial court specifically admitted her as an expert witness. Rafter testified as a lay witness. Rule 608(a) permits lay opinion testimony on a witness's character for truthfulness. N.C. Gen. Stat. § 8C-1, Rule 608(a). Defendant cites *O'Connor*, *Horton*, and *Aguallo*, and contends that the disputed testimony comprises Rafter's personal opinions because defendant believes Rafter

subtly communicated her belief in Cory's allegations against defendant. However, Rafter clearly testified regarding the process of preliminary interviews with alleged victims of child abuse prior to scheduling medical evaluations, and how she followed a similar process when she interviewed Cory. Her job was a preliminary procedure to prepare for a lengthier interview during the medical evaluation, not to determine Cory's credibility.

Neither Dr. Johnson nor Rafter testified that Cory was "credible" or "believable," or that certain elements "enhanced" Cory's credibility. Instead, Dr. Johnson's testimony explained that after examining Cory, his diagnosis was PTSD, and Rafter's testimony concerned the processes she used in scheduling Cory's medical evaluations.

## C. Cory's mother

Cory's mother also testified at trial regarding the circumstances surrounding Cory's allegations against defendant. Specifically, defendant contests her testimony regarding an instance in which she witnessed defendant pulling down the diapers of a little girl ("Abby")[2]. On cross-examination, defense counsel questioned Cory's mother several times regarding

---

[2] A pseudonym to protect the juvenile's privacy.

the incident and the timing of her reporting the incident to social workers. The State, on re-direct examination, asked Cory's mother why she mentioned the diaper incident to Child Protective Services. She responded that she "had realized that my son what he was saying was true because I had already realized what he [defendant] was doing to [Abby] [sic]."

Defendant did not object to this testimony at trial, but now contends that Cory's mother's testimony on re-direct was an impermissible bolstering of Cory's allegations. Our Courts have previously considered the effect of a mother's testimony regarding her children's truthfulness in cases concerning child sexual abuse. Because "most jurors are likely to assume that a mother will believe accusations of sexual abuse made by her own children, we cannot conclude that the challenged portion of . . . testimony had any significant impact on the jury's decision to convict Defendant." *State v. Dew*, ___ N.C. App. ___, ___, 738 S.E.2d 215, 219 (2013) (citing *State v. Ramey*, 318 N.C. 457, 466, 349 S.E.2d 566, 572 (1986) (stating that "[i]t is unlikely that the jury gave great weight to the fact that a mother believed that her son was truthful.")).

Even if defendant had convinced this Court that there was error, defendant fails to show that the jury would have reached

a different verdict based upon the disputed testimony from Dr. Johnson, Rafter, or Cory's mother. The State presented substantial evidence at trial from Cory and several witnesses, including social workers who had opportunities to observe Cory's demeanor and PTSD symptoms. Defendant fails to show that the jury would have reached a different verdict.

## V. Jury Instructions

Defendant also argues that the trial court committed plain error in referring to Cory as a "victim" when instructing the jury. We disagree.

"The judge may not express during any stage of the trial, any opinion in the presence of the jury on any question of fact to be decided by the jury." N.C. Gen. Stat. § 15A-1222 (2013). Similarly, in instructing the jury, "the judge shall not express an opinion as to whether or not a fact has been proved and shall not be required to state, summarize or recapitulate the evidence, or to explain the application of the law to the evidence." N.C. Gen. Stat. § 15A-1232 (2013). This Court has previously held that the trial court's use of the term "victim" to refer to a child prosecuting witness was not improper. *State v. Allen*, 92 N.C. App. 168, 171, 374 S.E.2d 119, 121 (1988). "The judge properly instructed the jury that it had to find that

defendant committed all the elements of the offenses charged before they could find defendant guilty, regardless of whether the child was referred to as the 'victim,' the prosecuting witness, or by any other term." *Id.*, 374 S.E.2d at 121. "The word 'victim' is included in the pattern jury instructions . . . and is used regularly to instruct on the charges of first-degree rape and first-degree sexual offense." *State v. Richardson*, 112 N.C. App. 58, 67, 434 S.E.2d 657, 663 (1993) (no plain error where defendant failed to object at trial to characterization of child prosecuting witnesses as "victims" in delivering pattern jury instructions for first degree rape and first degree sexual offense); *see State v. Henderson*, 155 N.C. App. 719, 722-23, 574 S.E.2d 700, 703-04 (2003) (trial court did not intimate that defendant had committed any crime, and no undue prejudice from use of "victim" in jury instructions).

To establish plain error, defendant must show that the erroneous instruction was a fundamental error that had a probable impact on the jury verdict. *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012). Where the trial court "simply gave the pattern jury instructions promulgated by the North Carolina Conference of Superior Court Judges[,]" this Court held "the trial court's use of the word, 'victim,' in its

charge to the jury did not reasonably have a prejudicial effect on the result of the trial[.]" *State v. Boyett*, ___ N.C. App. ___, ___, 735 S.E.2d 371, 379 (2012).

In the instant case, the trial court presented the following instructions regarding the charges of first degree sex offense and attempted sex offense:

> The Defendant has been charged with first degree sexual offense. For you to find the Defendant guilty of this offense, the State must prove three things beyond a reasonable doubt: First, that the Defendant engaged in a sexual act with the victim. A sexual act for the purposes of this offense means any penetration, however slight, by an object into the anal opening of a person's body.
>
> Second, that at the time the acts – of the acts alleged, the victim was a child under the age of 13.
>
> And third, that at the time of the alleged offense, the Defendant was at least 12 years old and was at least four years older than the victim.
>
> If you find from the evidence beyond a reasonable doubt that on or about the alleged date the Defendant engaged in a sexual act with the victim and that at that time the victim was a child under the age of 13 years, and that the Defendant was at least 12 years old, and was at least four years older than the victim, it would be your duty to return a verdict of guilty. If you do not so find or have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.

The Defendant has been charged with attempted first degree sexual offense. For you to find the Defendant guilty of this offense, the State must prove four things beyond a reasonable doubt: First, that the Defendant intended to engage in a sexual act with the victim. A sexual act, for the purposes of this offense, means fellatio, which is any touching by the lips or tongue of one person and the male sex organ of another.

Second, that at the time of the acts alleged, the victim was a child under the age of 13 years.

Third, that at the time of the alleged offense, the Defendant was at least 12 years old and was at least four years older than the victim.

And fourth, that the Defendant performed an act that was calculated and designed to accomplish fellatio, which conduct came so close to bringing about that sexual act that in the ordinary course of events the Defendant would have completed the act with the victim had he not been stopped or prevented. If you find from the evidence beyond a reasonable doubt that on or about the alleged date the Defendant intended to engage in a sexual act with the victim and that at that time the victim was a child under 13 years, and that the victim was at least 12 years old, and was at least four or more years older than the victim, [sic] and that the Defendant performed an act which in the ordinary course of events would have resulted in the sexual act by the Defendant with the victim, had not the Defendant been stopped or prevented from completing his apparent course of action, it would be your duty to return a verdict of guilty. If you

> do not so find or have a reasonable doubt as to one or more of these things, it would be would be [sic] your duty to return a verdict of not guilty.

In the instant case, defendant did not object to the use of the term "victim" as provided in the pattern jury instructions. Therefore, this Court can only review for plain error. *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334. Defendant contends that the term "victim" constituted an impermissible implication of the trial court's opinion that a crime had in fact been committed. However, this Court rejected a similar argument in *Boyett*, holding that the trial court "was not intimating any opinion upon whether Defendant had committed the crimes charged using the word, 'victim,' in its charge to the jury." ___ N.C. App. at ___, 735 S.E.2d at 379. The trial court, in the instant case, modeled its instructions on the pattern jury instructions, and instructed the jury that it had to find that defendant committed all elements of the offenses before he could be found guilty. In addition, since the trial court did not improperly imply that defendant had committed the crimes in question, there was no undue prejudice from the use of the word "victim" in the instructions. Therefore, defendant fails to show how the trial court's use of the term, as provided in the pattern jury instructions, constitutes plain error.

## VI. Conclusion

Neither Dr. Johnson's nor Rafter's testimony impermissibly bolstered or indicated that Cory was reliable or credible. In addition, the testimony of Cory's mother also did not rise to the level of plain error where "[i]t is unlikely that the jury gave great weight to the fact that a mother believed that her son was truthful." *State v. Ramey*, 318 N.C. at 466, 349 S.E.2d at 572. Furthermore, defendant fails to show that the jury would have reached a different verdict, therefore the testimony does not constitute plain error. Finally, the use of the word "victim" in the pattern jury instructions does not constitute an impermissible implication of the trial court's opinion that a crime had in fact been committed. We hold that the defendant received a fair trial, free from error.

No error.

Judges BRYANT and GEER concur.

Report per Rule 30(e).